991 P.2d 349

**Allen LEAVITT, Plaintiff–Appellant,**

v.

**Mary E. SWAIN, Defendant–Respondent.**

No. 25233.

Supreme Court of Idaho,
Boise, September 1999 Term.

Dec. 6, 1999.

Hepworth, Lezamiz & Hohnhorst, Boise, for appellant. John J. Janis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Mark S. Prusynski argued.

KIDWELL, Justice.

This is a review of a decision from the Court of Appeals involving an automobile accident. The plaintiff was injured when his vehicle collided with the defendant's vehicle. Following trial, the jury found the plaintiff to be 25% negligent and the defendant to be 75% negligent. The plaintiff filed various post-trial motions, all of which were denied. The plaintiff appealed, and the Court of Appeals held that there was no basis for the jury's finding that the plaintiff had been at fault. The Court of Appeals modified the judgment and assigned 100% of the fault to the defendant. The defendant now seeks review of the decision of the Court of Appeals. We affirm the decision of the district court in part and reverse in part, and remand.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On the evening of January 1, 1994, two vehicles collided on an icy section of Middleton Road near Caldwell. Just prior to the accident, plaintiff Allen Leavitt had been traveling south, and defendant Mary Swain had been traveling north. The accident, which was essentially head-on, severely damaged both vehicles. In addition, Leavitt claimed to be permanently disabled due to the accident.

Leavitt sued Swain to recover for his injuries, requesting compensation for medical ex-

penses, pain and suffering, and loss of past and future earning capacity. In his pleadings, Leavitt claimed that Swain had been negligent in the operation of her vehicle at the time of the accident. After denying Leavitt's motion for partial summary judgment, the case went to trial. At trial, Leavitt testified that Swain's vehicle began fishtailing prior to the accident. This testimony was supported by the testimony of Kara O'Dell, a passenger in Leavitt's car at the time of the accident. Mary Swain also testified that her vehicle had begun sliding on the ice prior to the accident, but that she did not know if she had crossed the centerline.

At the conclusion of the trial, the jury returned special verdicts finding that Swain had been 75% negligent in causing the accident and that Leavitt had been 25% negligent. The jury awarded Leavitt $37,300 in damages which were modified in accordance with his level of negligence. The award was further reduced by the amounts already paid by Swain's insurance company prior to trial. On May 31, 1996, the district court entered judgment on the verdict, leaving Leavitt with a final judgment of $20,975.

Following the judgment on the verdict, Leavitt made post-trial motions, among which were motions for j.n.o.v., new trial, and additur in lieu of a new trial. These motions were based, in part, on Leavitt's claim that one of the jurors had brought extraneous information to the jury deliberations. After all of these motions were denied, Leavitt appealed.

The Court of Appeals issued its decision on August 7, 1998. It reversed the district court in part, vacated in part, and remanded. Specifically, the Court of Appeals held that the district court's denial of Leavitt's motion for j.n.o.v. was in error. It reasoned that there was insufficient evidence presented at trial to allow the jury to conclude that Leavitt had been 25% negligent, and thus, the jury's verdict on that issue was set aside.

Next, the Court of Appeals held that Leavitt's motion for a new trial should be remanded to allow the district court to create its own assessment of the damages so that it could then determine if the jury's verdict was the result of passion or prejudice. The Court of Appeals also found that statements made by defense counsel in closing arguments did not warrant a new trial.

Additionally, the Court of Appeals ruled that the investigation into the allegation of juror misconduct was not sufficient, and that the investigation should be broadened; or in the alternative, that a new trial on damages should be held as an appropriate remedy. Finally, the Court of Appeals declined to hear the issue of the Rule 68 offer of judgment because the court had already determined that the assignment of 25% liability to Leavitt was improper.

On October 20, 1998, Swain filed a petition for review, seeking a review of the Court of Appeals' decision relating to the issue of Leavitt's liability. On December 31, 1998, this Court granted review of all the issues presented on appeal.

## II.

### STANDARD OF REVIEW

 When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. Rather, this Court acts as though it is hearing the matter on direct appeal from the decision of the district court. *Northland Ins. Co. v. Boise's Best Autos & Repairs,* 131 Idaho 432, 433, 958 P.2d 589, 590 (1998). However, this Court does give serious consideration to the decision of the Court of Appeals. *Id.* Ordinarily, when this Court decides to grant review, this Court will hear all the issues presented to the Court of Appeals. *Sato v. Schossberger,* 117 Idaho 771, 774, 792 P.2d 336, 339 (1990).

## III.

### ANALYSIS

A. **The District Court Properly Denied Leavitt's Motion For Directed Verdict, Motion For J.N.O.V. And Motion For A New Trial.**

1. **Leavitt's Motions For Directed Verdict And J.N.O.V. Were Properly Denied.**

Leavitt contends that the district court erred in failing to grant his motion for judg-

ment notwithstanding the verdict where all of the witnesses agreed that Swain caused the accident by crossing the centerline. Swain counters that she never admitted to crossing the centerline, and that the evidence is inconclusive.

In reviewing a decision to grant or deny a motion for j.n.o.v. or a directed verdict, this Court applies the same standard as that applied by the trial court when originally hearing the motion. *Quick v. Crane,* 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). When a court reviews a motion for j.n.o.v. under I.R.C.P. 50(b), the motion is treated as a delayed motion for a directed verdict and applies the same standard for both. *Quick,* 111 Idaho at 764, 727 P.2d at 1192. When ruling on a motion for j.n.o.v. the trial court must determine whether there is substantial evidence to support the jury's verdict. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 495, 943 P.2d 912, 921 (1997).

"Upon a motion for JNOV, the moving party . . . admits the truth of all the adverse evidence and all inferences that can be drawn legitimately from it." *Id.* at 496, 943 P.2d at 922. It is not a question of no evidence on the side of the non-moving party, but rather, whether there is substantial evidence upon which a jury could find for the non-moving party. *Quick,* 111 Idaho at 763, 727 P.2d at 1191. This Court will not make a finding of substantial evidence in favor of the non-moving party if it concludes "that there can be but one conclusion as to the verdict that reasonable minds could have reached." *Id.* at 764, 727 P.2d at 1192. In deciding a motion for j.n.o.v. the trial court may not reweigh the evidence or consider the credibility of the witnesses. Instead, it must draw all inferences in favor of the non-moving party. *Lanham,* 130 Idaho at 496, 943 P.2d at 922.

In this case, the district court identified several areas where the evidence, if construed in light most favorable to Swain, could lead to different verdicts by reasonable juries. The court and the jury heard evidence that Leavitt knew the road was icy and yet still traveled at 35 miles per hour. Additionally, there was evidence that Leavitt hit his brakes on the ice prior to impact, that there was debris in both lanes of travel, and that Swain never admitted that she crossed the centerline.

This evidence, while circumstantial and hardly dispositive, must be construed in favor of Swain and the jury verdict. Construing the evidence thus, could lead to the conclusion that Leavitt had been 25% negligent. Conflicting circumstantial evidence is sufficient to withstand a motion for j.n.o.v. *Juarez v. Aardema,* 128 Idaho 687, 694, 918 P.2d 271, 278 (1996). Therefore, we affirm the district court's decision denying Leavitt's motion for a new trial and judgment notwithstanding the verdict.

### 2. Leavitt's Motion For A New Trial Was Properly Denied.

The Court of Appeals held that the district court erred when it failed to grant Leavitt's motion for a new trial on damages. However, upon review of the record, it is clear that Leavitt did not base his motion for a new trial on the jury's inadequate award of damages. Rule 59(a)(5) (grounds for new trial on inadequate damages) was neither argued nor even cited to the district court in Leavitt's motion for a new trial.

Leavitt's motion for a new trial included several citations to Rule 59(a) of the Idaho Rules of Civil Procedure, which governs the grounds for new trials. Among these were: 59(a)(1), irregularity in the proceedings; 59(a)(2), misconduct of the jury; and 59(a)(7), error in law occurring after the trial.

Idaho Rule of Civil Procedure 59(a)(5) is the appropriate section for requesting a new trial based on "[e]xcessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." *Id.*

This Court has held that when a motion for a new trial is made under Rule 59(a), failure to specify which subsection is fatal to the motion. *Marias v. Marano,* 120 Idaho 11, 13, 813 P.2d 350, 352 (1991) ("Because the plaintiff failed to allege grounds for a new trial with particularity, the trial court properly denied the motion for a new trial and we affirm the denial.").

Because Leavitt failed to cite the correct subsection of Rule 59(a) the decision of the district court denying Leavitt's motion for a new trial is affirmed.

### B. The District Court Properly And Sufficiently Investigated Allegations Of Juror Misconduct.

■■■■ Leavitt claims that extraneous information, provided to the jury by juror V.W., presents sufficient grounds for granting a new trial. We acknowledge these facts present a serious question of juror misconduct. However, the subsequent investigation by the district court was sufficient to protect Leavitt's right to a fair trial.

After the trial ended, an art student approached Leavitt with information regarding juror misconduct. As the student later explained in an affidavit, she had been taking an oil painting class from V.W. in Nampa, when V.W. began discussing the details of the trial in which she had recently served as a juror. V.W. allegedly had told her class that the trial involved a shoulder injury, and that after the trial had started she called a family relative who was also a doctor specializing in that area. She said that V.W. further told the class that she had contacted the doctor and inquired into the type of injury involved in the case. The doctor replied that the injury involved was "absolutely not" a significant injury and that the injury was common amongst athletes who are usually able to fully recover after physical therapy. V.W. concluded that it was a "miracle she was on the jury because with her prior nursing background, and the information she had received from the family relative who was also a physician, she was able to evaluate the plaintiff's injury for the jury."

Upon receiving this information, Leavitt's counsel asked the art student for the name of another student who could corroborate the story told by V.W. Counsel then contacted the other student, who asked to remain anonymous, and was told a similar account of V.W.'s statements to her art class.

On March 8, 1996, the district court interviewed the presiding juror in connection with the alleged comments made by V.W. During this interview, the presiding juror identified V.W. as having reported to the jury that she "had been a nurse and was familiar with some of the doctor's work." She further explained to the jury that she thought the doctor who had operated on Leavitt liked to operate. However, when asked if V.W. or any other juror had tried to share information with the jury from an outside source, the presiding juror responded in the negative.

Following the presiding juror's interview, the district court decided that there was no basis to warrant further investigation by the court but did not discourage the parties from conducting their own investigations. However, when Leavitt later tried to depose V.W. on the matter, Swain filed for and was granted a protective order prohibiting the taking of V.W.'s deposition.

■■■■ The Idaho Rules of Civil Procedure, as well as the Idaho Rules of Evidence, provide that a jury verdict may be overturned and a new trial ordered where extraneous prejudicial information was introduced to the jury, or where outside information was improperly passed on to a juror. I.R.C.P. 59(a)(2); I.R.E. 606(b). When reviewing a decision on a new trial based on juror misconduct, this Court applies an abuse of discretion standard. *Hughes v. State*, 129 Idaho 558, 561, 929 P.2d 120, 123 (1996). The determination of whether a district court has abused its discretion is made by applying the three factors set forth in *Sun Valley Shopping Center Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■■■■ When a motion for a new trial is made because of juror misconduct, the district court must determine whether there has been "a showing that prejudice reasonably could have occurred." *Hughes*, 129 Idaho at 561, 929 P.2d at 123.

Applying an abuse of discretion standard to the present case, it is clear that the district court did not abuse its discretion in denying Leavitt's motion for a new trial based on juror misconduct. In its order denying the motion, the district court set forth its findings which followed the investigation of juror misconduct. It found that while V.W. had attempted to gain information from her brother, he had not returned

her call, and that according to the presiding juror the information never reached the jury. Additionally, the district court reported that the presiding juror had indicated that even though V.W. had told the jury she thought Leavitt's doctor was quick to operate, this information had not affected the amount of the award or the manner in which the verdict was decided.

This questionable juror conduct should not be condoned. However, the investigation of the district court was sufficient to protect Leavitt's rights, and therefore, the decision of the district court is affirmed.

**C. Comments By Defense Counsel During Closing Argument Were Not Sufficiently Improper Or Prejudicial To Deny Plaintiff A Fair Trial.**

■ In its closing arguments, counsel for Swain made two statements that Leavitt claims prejudiced the jury to the extent that a new trial is warranted. The first of the remarks was about Leavitt's character:

I thought of something that happened to me this week with my daughters. I have two daughters. Neither one of them drives, fortunately. I'll be very fearful when they do. But after a couple of days of frustration with this case, which it hasn't been fun for me, ... I went home and told my 12–year–old daughter, when you start driving, if you ever have the misfortune of running into somebody, don't run into somebody like Allen Leavitt.... But I hope that anybody [who] is involved in an accident, my daughters or whatever, they are going to pick somebody that you can verify what the damage is.

Leavitt maintains that this statement amounts to vouching on the part of Swain's counsel about "plaintiff's lack of character or credibility." However, when read in context with the rest of the closing argument, it appears that Swain's counsel was not "vouching," but was simply commenting on the lack of evidence to prove the amount and certainty of damages Leavitt was claiming.

This Court has considered (albeit generally in criminal cases) comments by counsel in closing arguments, and determined that "[c]ounsel for both sides have traditionally been afforded considerable latitude in their arguments to [the] jury and have the right to discuss fully, from their respective standpoints, the evidence and inferences and deductions arising therefrom." *State v. Sistrunk,* 98 Idaho 629, 630, 570 P.2d 866, 867 (1977).

■ Further in his closing argument, counsel for Swain commented, "This accident did not ruin Allen Leavitt's life. It did not ruin him to the extent that $510,000 can ruin Mary Swain." At trial, Leavitt objected to this comment as improper, and the judge sustained the objection.

Under Idaho law the fact that a party does or does not have insurance cannot be admitted to prove or disprove negligence. I.R.E. 411; *Brown v. Jerry's Welding and Constr. Co.,* 104 Idaho 893, 896, 665 P.2d 657, 660 (1983).

In this case it is certainly arguable that the statements by Swain's counsel were for the sole purpose of informing the jury that Swain did not have insurance. The only obvious way that a large jury verdict could "ruin Mary Swain" was if she did not have insurance to cover the judgment.

However, even though the comment may have violated a rule of evidence, it does not necessarily follow that a new trial must be granted. Here there were three procedural safeguards to prevent the jury from determining the issue of negligence based on Swain's purported lack of insurance. First, when the statement was made to the jury, Leavitt's counsel objected and the objection was sustained. Second, the court had given Idaho Jury Instruction 101 which states, "No insurance company is a party to this action. You must refrain from any inference, speculation or discussion about insurance." And third, the court gave its own admonition prior to trial: "The arguments and remarks of the attorneys involved in this case are intended to help you in understanding the evidence and in applying the instructions. They are not themselves evidence. If any argument or remark has no basis in the evidence, then you should disregard it."

■ When improper statements are made to the jury, those statements do not rise to reversible error when an objection is sustained and the court gives corrective instructions to the jury. *Cf. State v. Major*, 105 Idaho 4, 9, 665 P.2d 703, 708 (1983) (when an unresponsive answer had been heard by the jury, "[t]he proper procedure for an attorney to follow . . . is to object after the answer, ask that it be stricken from the record, and that the jury be instructed to disregard it."). The Court of Appeals has held in a similar criminal case that a sustained objection and curative jury instruction may be enough to remedy improper remarks made during the prosecutor's closing arguments. *State v. Campbell*, 104 Idaho 705, 718, 662 P.2d 1149, 1162 (Ct.App.1983). Because we conclude that the alleged improper comments made by Swain's counsel were satisfactorily handled in this case, the decision of the district court is affirmed.

### D. The District Court Properly Denied Leavitt's Motion For Partial Summary Judgment And Motion in Limine And Gave The Proper Jury Instructions On The Issue Of Liability.

#### 1. Leavitt's Motion For Partial Summary Judgment Is Not Reviewable.

Leavitt argues that his motion for partial summary judgment should have been granted because at that time all the witnesses, including Swain, agreed that the collision was caused when Swain lost control of her vehicle. Swain contends that the district court's denial of the motion for partial summary judgment was proper because, at the time, the evidence that Leavitt offered was questionable.

■ On appeal, the denial of a motion for summary judgment on an issue which is later submitted to the jury is not reviewable. *Watson v. Idaho Falls Consol. Hosps., Inc.*, 111 Idaho 44, 46, 720 P.2d 632, 634 (1986). As the Court of Appeals has explained:

> This will prevent a litigant who loses a case, after a full and fair trial, from having an appellate court go back to the time when the litigant had moved for summary

judgment to view the relative strengths and weaknesses of the litigants at that earlier stage. Were we to hold otherwise, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his case fully on an interlocutory motion.

*Evans v. Jensen*, 103 Idaho 937, 942, 655 P.2d 454, 459 (Ct.App.1982).

Therefore, we will not review the district court's denial of Leavitt's motion for partial summary judgment.

#### 2. The District Court Did Not Abuse Its Discretion When It Denied Leavitt's Motion In Limine.

■ On the first day of trial, Leavitt argued in a motion in limine to exclude Swain's father from testifying as to the icy condition of the road after the accident. The district court denied the motion.

■ When reviewing a district court's decision on a motion in limine, this Court adheres to an abuse of discretion standard. *Lanham*, 130 Idaho at 491, 943 P.2d at 917. When considering whether a district court has abused its discretion, this Court considers the three factors set forth in *Sun Valley Shopping Center Inc.*, 119 Idaho at 94, 803 P.2d at 1000.

The district court concluded that since the icy condition of the road was a factual matter, it should not be kept from the jury. This illustrates that the district court perceived that it had the discretion to allow the testimony or to exclude it.

Next, the district court acted consistent with legal standards when it ruled that the evidence was admissible as a question of fact. While relevant testimony evidence can be excluded if the "probative value is substantially outweighed by the danger of unfair prejudice," I.R.E. 403, the district court found that any possible prejudice would be remedied through appropriate jury instructions.

Finally, the district court exercised reason when it concluded that Swain's father should be allowed to testify as to the icy conditions of the road. During the motion in limine, counsel for the defendant argued that since

the investigating officer was planning on testifying as to the icy condition of the road, it was only fair that Swain's father have the opportunity to rebut that testimony. Therefore, the district court had before it an adequate legal reason for allowing the testimony. Accordingly, the decision of the district court in allowing this testimony is affirmed.

### 3. The District Court Properly Instructed The Jury.

A review of jury instructions requires this Court "to determine whether the jury instructions as a whole, and not individually, fairly and accurately reflect the applicable law." *Leazer v. Kiefer*, 120 Idaho 902, 904, 821 P.2d 957, 959 (1991). If the instructions state the applicable law and adequately present the issues, then no error occurred. *Id.* Reversible error is only committed where an instruction misleads the jury or prejudices the complaining party. *Id.*

The district court instructed the jury on both negligence *per se* and general negligence. While Leavitt claims that the two are incompatible and should not be given together, it appears in this instance that both were necessary for the determination of the matter.

The definition of negligence *per se* was necessary because the district court instructed the jury that the Idaho Code has statutes which require operators of motor vehicles to operate them on the right side of the road, and that Swain had "admitted that she lost control over her vehicle and collided with plaintiff's vehicle."

However, the jury also heard argument that Swain had hit the brakes and that she was driving too fast for the conditions. Additionally, Swain pursued a theory that Leavitt had also hit his brakes and had also been driving too fast for the conditions. Since both of these theories operate under the regular rules of negligence, the district court did not err in giving both the negligence and the negligence *per se* instructions.

Accordingly, we hold that the district court did not err in presenting the jury with both negligence *per se* and regular negligence instructions.

### E. Leavitt Was The Prevailing Party For Purposes Of Awarding Costs Under A Rule 68 Offer Of Judgment.

Following deliberations, the jury awarded Leavitt $37,000 in damages. However, the jury also found that Leavitt was 25% negligent. This finding of negligence reduced Leavitt's award to $27,975. The district court further reduced this amount by the $7,000 in pre-litigation payments made to Leavitt. Thus, Leavitt's final net verdict was $20,975. The district court held that, since Leavitt's adjusted final judgment was less than the $25,000 offer of judgment, Swain was the prevailing party.

When a party makes pre-litigation payments to the other side, the paying party is allowed to subtract those payments from the jury's verdict. I.C. § 41–1840; *Potter v. Mulberry*, 100 Idaho 429, 433, 599 P.2d 1000, 1004 (1979). Thus, the district court did not err in reducing Leavitt's verdict by the $7,000 pre-litigation payments. However, the district court should not have ended its judgment there.

Section 41–1840 of the Idaho Code deals with repayment of pre-litigation payments. In referring to pre-litigation payments made under an insurance policy, the statute provides, "All such payments shall be credited upon any settlement with respect to the same damage ... or judgment or award rendered therefor in such an action against, the payor or his insurer, and in favor of any person to whom or on whose account payment was made." I.C. § 41–1840(2). While a judgment following a jury verdict clearly fits within this description, we find that a Rule 68 offer of judgment does also.

An offer of judgment represents a party's offer to settle the case for a given amount. Thus, an offer of judgment includes "*any* settlement or judgment." *Id.* We hold that pre-litigation payments, which can be credited to a verdict under I.C. § 41–1840, must also be credited to an offer of judgment made under I.R.C.P. 68.

While the district court was correct in crediting the verdict with the pre-litigation payments, it should have also credited the

$25,000 offer of judgment with the same $7,000 pre-litigation payments. This would have resulted in an offer of judgment of $18,000 and a final verdict of $20,975. Hence, we hold that the verdict awarded to Leavitt was in excess of Swain's offer of judgment. The decision of the district court on the issue of prevailing party is reversed.

## IV.

## CONCLUSION

We affirm the decision of the district court denying Leavitt's motions for a new trial and j.n.o.v. While juror misconduct perhaps did occur, we hold that the district court properly remedied the situation, thus avoiding the need for a new trial. Similarly, a new trial is not warranted on the issue of counsel's closing arguments because the sustained objection and the jury instructions cured any prejudice to Leavitt.

Additionally, we hold that the district court erred when it determined that Swain was the prevailing party under the Rule 68 offer of judgment, where the court failed to credit the $7,000 in prepayments from both the verdict and the offer of judgment.

The judgment of the district court is affirmed in part, reversed in part and remanded for a determination of Rule 68 costs consistent with this opinion. No costs or attorney fees on appeal.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS, concur.