54 P.3d 948

**WESTERN HERITAGE INSURANCE COMPANY, Plaintiff–Counterde-fendant–Appellant,**

v.

**Don R. GREEN and Laurel Green, Individually and as husband and wife, Defendants–Respondents,**

and

**J.R. Simplot Company, a Nevada Corporation, Defendant in Intervention–Counter–claimant–Respondent.**

No. 26826.

Supreme Court of Idaho, Boise, May 2002 Term.

Aug. 9, 2002.

See also 977 P.2d 196.

Lerma Law Office, P.A., Boise, for appellant. Michael G. Brady argued.

Brent M. Morgan, Pocatello, for respondent Green. Brent Morgan argued.

Cantrill, Skinner, Sullivan & King, LLP, Boise, for respondent Simplot. Robert D. Lewis argued.

TROUT, Chief Justice.

This is a declaratory judgment action interpreting a manufacturers' and contractors' Commercial General Liability insurance policy issued by Western Heritage Insurance Company ("Western Heritage") to Don and Laurel Green (the "Greens").

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Western Heritage initiated this declaratory judgment action asking for the interpretation of its Commercial General Liability insurance policy with broad form property damage coverage issued to the Greens for the purpose of covering the Greens' commercial agricultural chemical application business during the period April 4, 1994 to April 4, 1995. J.R. Simplot Company ("Simplot") intervened in this case on the basis it is entitled to indemnification under the policy.

Sometime in the Spring of 1994, Ty Nedrow and Tuck Nedrow d/b/a the Nedrow Brothers (the "Nedrows") contracted with Simplot for the purchase of fertilizer and weed control and the application of those chemicals to their farmland in Fremont County. In turn, Simplot contracted with the Greens to apply the chemicals sold to the Nedrows. The fertilizer and weed control was to be applied to the farm ground prior to the planting of a potato crop. During the

course of the application, the nozzles on the sprayer used to apply the chemicals became plugged, causing some areas of the fields to be skipped and other areas to be insufficiently sprayed. At the time, the exact area affected was unknown.

The Nedrows planted the entire field with potatoes after this incident had occurred. When the potato crop initially emerged, everything seemed normal. However, over the course of several weeks of growth, weeds began to appear in the strips where there was little or no chemical application. The weeds grew large and the potato foliage in these strips gradually yellowed and started to die. When plants from these strips were pulled, it was discovered that the affected plants had poor root systems. When the potatoes were harvested, fewer potatoes were produced, and the quality had been greatly diminished, as the potatoes were slimmer, rougher, blemished and hooked on the ends. Many of the potatoes were not marketable.

In June, 1995, the Nedrows filed a lawsuit against Simplot claiming damages in the amount of $180,000 for economic losses resulting from the diminution in yield from the 1994 potato crop due to this error in application. The Greens were not named as defendants in the lawsuit. Simplot tendered defense of the Nedrows' lawsuit to the Greens, who in turn tendered it to Western Heritage. Western Heritage recognized coverage under its policy and engaged counsel to defend Simplot in the lawsuit, but submitted a letter to the Greens identifying an "Endorsement limiting liability," limiting coverage to only $25,000 for crop spraying activities.

The Nedrows' lawsuit against Simplot was eventually settled for $128,000. Simplot contributed $103,000 towards the settlement and Western Heritage contributed $25,000.

On February 6, 1996, Simplot filed suit against Western Heritage on the basis it was a co-insured, arguing the policy provided coverage up to $500,000. The claim was subsequently amended to allege Simplot had been assigned the Greens' right to pursue a claim for damages under the policy. This action was dismissed on the basis Simplot was not an insured under the policy, and because no claim had been filed against the Greens, there was no basis for coverage under the policy. This Court upheld the dismissal in *J.R. Simplot Company v. Western Heritage Insurance Company*, 132 Idaho 582, 977 P.2d 196 (1999).

On August 8, 1997, the Greens filed a Chapter 13 bankruptcy action, later amended to a Chapter 7 proceeding. On November 26, 1997, Simplot filed a motion to lift the bankruptcy stay in order to pursue an action against the Greens to the extent of insurance coverage. That motion was granted, and on March 2, 1998, Simplot filed an action against the Greens for indemnification based upon the damages suffered as a result of the Nedrows' crop loss claim. The Greens tendered the claim to Western Heritage pursuant to its insurance policy.

Western Heritage denied coverage beyond the $25,000 already paid and filed this declaratory action against the Greens seeking a determination of their legal obligations under the policy. Simplot was permitted to intervene.

Both Simplot and Western Heritage moved for summary judgment. On February 24, 2000, the district judge issued a Memorandum Decision and Order denying both motions, finding there were issues of material fact regarding whether or not the Greens' misapplication or non-application of fertilizer and herbicide caused property damage as covered by the policy. The district judge ordered a court trial to resolve this issue.

A court trial was held on March 20–21, 2000. On June 9, 2000, the trial judge issued a Memorandum Decision and Order, concluding coverage existed up to $500,000 based upon his finding that the Nedrows' potato plants were "tangible property" which were damaged under the insurance policy, and that no applicable exclusions and/or endorsements applied.

Simplot and the Greens moved for costs and attorney's fees. The trial judge then issued a third Memorandum Decision and Order, awarding the Greens and Simplot costs and attorney's fees under Idaho Code § 41–1839.

## II.

### STANDARD OF REVIEW

A trial judge's findings of fact in a court tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial judge's role as trier of fact. *Conley v. Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127 (1999); *Lindgren v. Martin,* 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997). Review of the trial judge's decision is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Conley* at *id.* If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Id.* However, this Court exercises free review over questions of law. *Id.*

## III.

### DISCUSSION

1. **We decline to review the denial of summary judgment.**

This Court has adopted the general rule that an order denying a motion for summary judgment is not reviewable on appeal from a final judgment. *Leavitt v. Swain,* 133 Idaho 624, 631, 991 P.2d 349, 356 (1999) (holding the denial of a motion for summary judgment on an issue which is later submitted to the jury is not reviewable); *Watson v. Idaho Falls Consol. Hosps., Inc.,* 111 Idaho 44, 46, 720 P.2d 632, 634 (1986); *P.N. Cedar, Inc. v. D & G Shake Co.,* 110 Idaho 561, 565, 716 P.2d 1333, 1337 (Ct.App. 1986) (declining to review the denial of the summary judgment motion on issue later submitted to the court).

The rationale of this rule, as articulated by the Court of Appeals in *Evans v. Jensen,* 103 Idaho 937, 942, 655 P.2d 454, 459 (Ct.App. 1982), is that review of the denial of summary judgment motions would be unjust to the party who prevailed at trial after the evidence was more completely presented and would be inconsistent with the admonition given to trial courts to resist granting motions for summary judgment if doubt exists as to a party's right to a trial. *Id.* The Court

of Appeals in *Evans* noted that an improper denial of a motion for summary judgment does not constitute reversible error because the result becomes merged in the subsequent trial. *Id.*

Based upon this rule, we decline to review the denial of Western Heritage and Simplot's motions for summary judgment.

2. **The district judge erred in holding the policy provided the Greens insurance coverage for property damage in excess of $25,000.**

This Court's standard of review concerning a lower court's interpretation of an insurance contract depends on whether the contract is ambiguous. *Ryals v. State Farm Mut. Auto. Insur. Co.,* 134 Idaho 302, 304, 1 P.3d 803, 805 (2000); *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). Determination of whether a document is ambiguous is itself a question of law. *DeLancey* at *id.* Interpretation of an ambiguous document presents a question of fact. *Id.* On the other hand, interpretation of an unambiguous document is a question of law subject to free review. *Ryals* at *id;* *DeLancey* at *id.*

To determine whether the Western Heritage insurance policy is ambiguous, this Court is to look at the relevant provisions. *See id.* The relevant coverage provisions of the Western Heritage Insurance policy provide:

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of . . .

B.  property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to

pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Thus, the claim against Western Heritage is only viable if the crop spraying activities involved "property damages" caused by an "occurrence." *See Magic Valley Potato Shippers v. Cont'l Insur.*, 112 Idaho 1073, 1076, 739 P.2d 372, 375 (1987). Under the policy, "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Property damage" is defined by the policy to mean:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

This coverage provision is straightforward and concise. It cannot be fairly described as ambiguous, and the trial judge below did not conclude the provision is ambiguous. Accordingly, because this is an unambiguous provision, the meaning of this language is a question of law subject to free review. *Ryals* at *id; DeLancey* at *id.*

■ The parties concede the non-application or insufficient application of chemicals constituted an occurrence within the meaning of the policy, which resulted in damage. The parties disagree, however, as to whether the damages caused by this occurrence are covered under the terms of the policy. This dispute regarding damages hinges upon whether there was damage to the soil or to the potato plants. The issue is vital because it dictates whether any exclusions/endorsements to the policy apply to limit coverage.

The trial judge concluded the crop damage was covered under the definition of property damage, as the potato plants constituted "tangible property" under the policy. In so concluding, however, the trial judge primarily focused on the first definition of property damage. Under paragraph one of the definition, he concluded that the only physical injury or destruction to tangible property must have been to the potatoes. He then looked at only one of the exclusions under the policy, and concluded it did not apply based upon his finding that the potato plants constituted tangible property.

We agree that paragraph one of the property damage definition refers to potatoes as tangible property. Paragraph two, however, makes reference to loss of use of property which has not been physically injured. We find this relates to the loss of use of the soil. The evidence at trial established both the actual plants and the soil were affected by the misapplication of chemicals. The potato plants suffered throughout the growing season because of lack of nutrients and weed control. The plants were yellowed and had poor root systems and, when harvested, the few potatoes produced were slimmer, rougher, blemished and hooked on the ends. The soil also suffered injury, as it lacked nutrients and weed prevention, even though such damage may have only been temporary.

## The Policy Exclusions

■ The only exclusion to the policy considered by the trial judge excludes coverage when property is in the care, custody or control of the insured. He concluded the exclusion did not apply.

Western Heritage argues the trial judge erred in concluding Exclusion (k) was inapplicable, and in failing to consider other exclusions under the policy, such as Exclusion (y) and Exclusion (m). The trial judge concluded Exclusion (k) (the care, custody and control exclusion) did not apply because the potato plants were not in the care, custody or control of the Greens at the time of their work on the Nedrow property.

Exclusion (k) provides:

This insurance does not apply:

(k) to property damage to

. . .

(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

. . .

Based upon our conclusion above, that there was physical injury to both the soil and to the potato plants, we find exclusion (k) applies because the soil was in the care, custody and control of the Greens. Coverage under the policy, therefore, is limited to the $25,000 already paid by Western Heritage.

■ Even if we read the policy and the facts to conclude there was damage only to the potatoes, other exclusions to the policy apply. The trial judge did not address the applicability of the other exclusions under the policy because he concluded they were inapplicable due to a typographical error on the Endorsement sheet. The trial judge found the endorsement was identified as WHI20–0106, whereas the attachment to the declaration page was labeled WHI21–0106, and did not, therefore, match. The trial judge stated this confusion, coupled with prior policies and the amount of premium paid in relation to the policy amount, would lead a reasonable person to conclude the limitations did not apply.

The Endorsement page of the policy does refer to WHI21–0106; however, the actual endorsement attached to the policy does not make reference to any number. It is apparently unlabeled. In looking at the Endorsement, it is clear that it is attached to and part of the policy, as it lists as the insured "Don and Laurel Green." Because the language of the Endorsement clearly makes it part of the policy, the trial judge erred in finding that these endorsements should not be included as part of the policy.

■ The other exclusions included on the Endorsement page are Exclusion (y) and Exclusion (m). Exclusion (y) provides:

This insurance does not apply:

(y) to property damage

. . .

(2) except with respect to liability under a written sidetrack agreement or the use of elevators to

. . .

(d) that particular part of any property, not on the premises owned by or rented to the insured,

(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or

(ii) out of which any property damage arises, or

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.

Exclusion (y)(2)(d)(i), (ii), and (iii) applies only to property damage on property other than that owned by or rented to the insured. This exclusion attempts to exclude damage to the "target field," i.e. the field actually being sprayed, precisely the situation in this case, as the potatoes were on the property of the Nedrows, and not the insureds, the Greens. The Greens contend Western Heritage should be estopped from denying coverage given the facts of this case, arguing this exclusion makes the coverage illusory, as the exclusions, well hidden within the policy take away coverage for the very act sought to be covered under the policy. We find this argument unpersuasive. The purpose of this type of exclusion in an insurance policy is to provide coverage for damage to property other than the "target field." For example, the exclusion would not apply in instances where "drifting" occurred, i.e. the spray drifts onto property that is not the intended field.

■ The final exclusion not addressed by the trial judge is Exclusion (m), which provides:

This insurance does not apply:

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay or lack of performance by or on behalf of the named insured of any contract or agreement, or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; but this exclusion does not apply to loss of use of other

tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured

Because this Court concludes the misapplication caused a "loss of use of tangible property" that includes the loss of the use of the soil, Exclusion (m) excludes coverage.

**3. We decline to address whether the district judge erred in finding the parties did not have a right to a jury trial.**

Ordinarily, an objection not made at trial will not be considered on appeal. *McNeil v. Gisler*, 100 Idaho 693, 696, 604 P.2d 707, 710 (1979); *Koch v. Elkins*, 71 Idaho 50, 225 P.2d 457 (1950). Although there are a few limited exceptions to this general rule, none are applicable in this case. *See Briggs v. Golden Valley Land & Cattle Co.*, 97 Idaho 427, 546 P.2d 382 (1976); *Webster v. Potlatch Forests*, 68 Idaho 1, 187 P.2d 527 (1947); *Marysville Mercantile Co., Ltd., v. Home Insur. Co.*, 21 Idaho 377, 395, 121 P. 1026, 1033 (1912) (this Court held it will not consider or review a question presented for the first time on appeal unless it is a question of jurisdiction or that the pleading does not state a cause of action).

Western Heritage did not object below to the district judge's decision to order a bench trial. This Court, therefore, will not consider the issue.

**4. We vacate the award of costs and attorney's fees to the Greens and Simplot.**

Because we reverse, we vacate the award of costs and attorney's fees to below to Greens and Simplot.

**5. Attorney's fees and costs on appeal.**

The Greens and Simplot request an award of attorney's fees pursuant to I.C. § 12–121, I.R.C.P. 54(e)(1), I.A.R. 40 and 41, and I.C. § 41–1839. For the reasons set forth above, the Greens and Simplot are not the prevailing parties on appeal and, therefore, their request for attorney's fees and costs on appeal is denied.

## IV.

## CONCLUSION

Based upon the foregoing, we hold the district judge erred in concluding property damage under the policy was solely limited to the potatoes and in determining the exclusions under the policy did not apply. We therefore vacate the award to Simplot, as well as the award of costs and attorney's fees to the Greens and Simplot. We award costs on appeal to Western Heritage.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.