76 P.3d 960

**In the Matter of the Estate of Laurence Archie Steelsmith, Deceased.**

**Clarence F. STEELSMITH, in his capacity as Personal Representative of the Estate of Laurence Archie Steelsmith, Petitioner–Appellant,**

v.

**James B. TROUT, Respondent.**

**Nos. 28472, 28473.**

Supreme Court of Idaho, Boise, April 2003 Term.

July 31, 2003.

Rehearing Denied Sept. 22, 2003.

Clark & Feeney, Lewiston, for appellant Steelsmith Estate. Paul T. Clark argued.

Lukins Annis, Coeur d'Alene, for appellant Steelsmith individual. Mischelle R. Fulgham and Martin G. Weber argued.

Landeck Westberg Judge & Graham, Moscow, for respondent. Charles Graham argued.

SCHROEDER, Justice.

This is a contest involving the will of Laurence Steelsmith (the Testator). A dispute involving the interpretation of a conditional bequest has arisen between Clarence Steelsmith (Steelsmith) and James "Butch" Trout (Trout). Clarence is the Testator's brother, business partner, and personal representative of the Testator's estate. Trout is the Testator's cousin and beneficiary under the Testator's will. The dispute involves the interpretation of a provision in the Testator's will that bequeaths 98% of his interest in the Steelsmith Brothers partnership to Trout on condition that the farming business is continued without liquidation and in the form of a partnership between Steelsmith and Trout for so long as Steelsmith shall live.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Testator and Steelsmith lived and farmed together as equal partners in Steelsmith Brothers, a farming operation in Latah County. Neither brother ever married nor had children. Beginning in the mid 1960s, the brothers hired their cousin Trout to help them on the farm. Trout began working for Steelsmith Brothers as a teenager and worked continuously for them, except for a brief period in 1995.

The Steelsmith brothers were virtually inseparable, dressing alike and driving identical trucks. In 1987 the brothers engaged an attorney to draft their wills. The Testator signed his will on January 28, 1988. Both brothers were present with the attorney at the time they discussed their wills. The 1988 wills were materially identical, with the only difference being the exchange of the brothers' names. The Testator died January 5, 1998.

The provision at issue in the Testator's will reads as follows:

> I hereby give and bequeath to my cousin, JAMES B. TROUT, 98% of my interest and ownership in the partnership conducting business in the State of Idaho under the name of Steelsmith Brothers, provided that said business is continued without liquidation and in the form of a partnership between CLARENCE FREDRICK STEELSMITH and JAMES B. TROUT for so long as CLARENCE FREDRICK STEELSMITH shall live. It is a further condition of this bequest that the management and control of said partnership be vested in CLARENCE FREDRICK STEELSMITH as to all business matters.

It is the intent of the Testator herein that the above clause grant CLARENCE FREDRICK STEELSMITH complete and total control of the business, currently operating under the name of Steelsmith Brothers, and the assets thereof so long as he shall live.

If the above stated conditions are not met or complied with said partnership interest shall become part of the residuary estate and pass in accordance with Article VI.

Steelsmith maintains that this provision gives him absolute control over the disposition of the Testator's property, arguing that the Steelsmith Brothers partnership ceased to exist on the Testator's death, and as a result, the Testator's entire interest in the partnership passes to him "in accordance with Article VI" which names him as the residuary devisee.

Trout maintains that the provision distinguishes between "ownership and interest" in the first paragraph and "interest" in the third paragraph; thus, the Testator meant two different things in the two paragraphs. Trout argues that the Testator either intended to convey a life estate to Steelsmith with the remainder to Trout, or to convey the Testator's ownership in the partnership in trust to Steelsmith with the residue being conveyed to him upon Steelsmith's death.

By request from the magistrate court, the district court assumed jurisdiction over the case. The district court ruled that the will was ambiguous, and a three-day trial ensued. The district court construed the will to create a resulting trust of 98% of the Testator's capital account in Steelsmith Brothers partnership in favor of Trout. Steelsmith appeals.

## II.

### STANDARD OF REVIEW

When interpreting a will, the Court must give effect to the intention of the testator. *See* I.C. § 15–2–603. This intention is discovered by examining the will, and such intention expressed in the will controls the legal effect of the testator's dispositions. *Howard v. Estate of Howard,* 112 Idaho 306, 308, 732 P.2d 275, 277 (1987). Whether a document is ambiguous is a question of law over which this Court exercises free review. *Western Heritage Ins. Co. v. Green,* 137 Idaho 832, 835, 54 P.3d 948, 951 (2002). Interpretation of an ambiguous document presents a question of fact. *Id.*

The findings of fact from a court trial are liberally construed in favor of the judgment entered. *Id.* Such findings of fact will not be set aside unless clearly erroneous. I.R.C.P. 52(a). If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Western Heritage Ins. Co.,* 137 Idaho at 835, 54 P.3d at 951.

## III.

### THE CONDITIONS PRECEDENT FOR A DEVISE TO TROUT HAVE NOT BEEN MET

There are two core issues in this case: (1) is the will ambiguous, and (2) have the conditions precedent to the bequest to Trout been satisfied. However, regardless of any possible ambiguity, the conditions precedent to the devise to Trout have not been satisfied, and he is not entitled to take under the will.

The argument that the Testator's will is ambiguous is based on the use of one word. In the first paragraph of Article V of the Testator's will, the Testator bequeathed to Trout "98% of my *interest and ownership* in the partnership." (emphasis added). In the last sentence of Article V, the Testator's will provides that if the stated conditions are not satisfied, then "said partnership *interest* shall become part of the residuary estate." (emphasis added). Trout successfully argued before the district court that the use of "interest and ownership" in the first paragraph, and "interest" in the final paragraph created ambiguity regarding the devise to him. The district court concluded that because "ownership" was not used in the last paragraph, the Testator must have intended a distinction between "interest" and "ownership." As a consequence, the district court concluded that a resulting trust of 98% of the *ownership* (capital account) was created for Trout, and the partnership *interest* passed by the residuary clause. However, regardless of the interpretation given to the challenged

wording, the conditions precedent for Trout to take under the will have not been satisfied.

 The Testator's will expressly states that Trout takes 98% of the Testator's "interest and ownership in the partnership ... *provided that* said business is continued without liquidation and in the form of a partnership between [Steelsmith] and [Trout] for so long as [Steelsmith] shall live. It is a further condition that the management and control of the partnership be vested in [Steelsmith]." (emphasis added). None of the conditions precedent to Trout taking under the will have been satisfied. The Steelsmith Brothers partnership terminated by operation of law when the Testator died,[1] and the sole remaining partner, Steelsmith, elected not to enter into a partnership relationship with Trout. Moreover, the assets of the partnership were liquidated after the Testator died. The will clearly made devise of the "interest and ownership" subject to conditions that were not satisfied. Nowhere does the will segregate the Testator's "ownership," (capital account) as unconditionally going to Trout. The will makes no mention of a partial inheritance to Trout if the conditions are not met. There is no legal or factual basis to shield the capital account from the conditions the Testator expressly placed in his will.

 The Testator's will clearly states how the partnership interest is to be handled in the event the conditions precedent are not satisfied, and this Court must give effect to the Testator's intent expressed in the conditions placed in his will. *See* I.C. § 15–2–603. The Testator directed in the third paragraph of Article V that "[i]f the above stated conditions are not met or complied with said partnership interest shall become part of the residuary estate and pass in accordance with Article VI." Under Article VI, Steelsmith is the residuary devisee. Under I.C. § 15–2–606(a), if a devise fails for any reason, then it becomes part of the residue. Applying that statute to these facts yields the result that even if there is a distinction between "inter-

est" and "ownership" the ownership devise fails because it did not satisfy the conditions precedent. The lack of the word "ownership" in the third paragraph of Article V does not change the fact that under Idaho law, any devise which fails becomes part of the residue. Under these circumstances other issues raised in the appeal are moot.

## IV.

### CONCLUSION

The decision of the district court is reversed. Under the will Steelsmith is entitled to the interest and ownership the Testator had in the partnership. Steelsmith is awarded costs. No attorney fees are allowed.

Justices WALTERS, KIDWELL, EISMANN and Justice Pro tem SCHWARTZMAN concur.

governing partnership breakups and dissolution. RUPA introduced the new concept, "dissociation," and changed the meaning of "dissolution." For purposes of this case, however, "dissolution" is used with the meaning attached under the former Uniform Partnership Act.

---

1. There is no dispute that the Steelsmith Brothers partnership was dissolved as a matter of law pursuant to I.C. § 53–331 upon Testator's death. This code section was repealed on July 1, 2001, when Idaho adopted the Revised Uniform Partnership Act ("RUPA"). RUPA changes the law