**FARM BUREAU MUTUAL INSURANCE COMPANY,** Appellant,

v.

**EARTHSOILS, INC., Respondent,**

Laverne Ptacek, et al., Respondents.

No. A11–693.

Court of Appeals of Minnesota.

April 2, 2012.

874

Curtis D. Ruwe, Beth A. Jenson Prouty, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for appellant.

Paul A. Sortland, Sortland Law Office, PLLC, Minneapolis, MN, for respondent Earthsoils, Inc.

J. Poage Anderson, David H. Redden, Fabian May & Anderson, PLLP, Minneapolis, MN, for respondents Laverne and Jeffrey Ptacek.

Considered and decided by KALITOWSKI, Presiding Judge; SCHELLHAS, Judge; and BJORKMAN, Judge.

## OPINION

BJORKMAN, Judge.

Appellant Farm Bureau Mutual Insurance Company challenges the district court's summary judgment in favor of its insured, respondent Earthsoils, Inc. Farm Bureau argues that the district court erred by concluding that the insurance policy requires Farm Bureau to defend and indemnify Earthsoils for claims asserted by respondents Laverne Ptacek and Jeffrey Ptacek (father and son, collectively the Ptaceks). We reverse.

## FACTS

The Ptaceks jointly operate a farm in Steele County. Earthsoils provides agronomy consulting services to farm operators and sells fertilizer based on its recommendations. At all relevant times, Earthsoils had commercial general liability (CGL) insurance coverage through a policy issued by Farm Bureau.

In spring 2005, the Ptaceks hired Earthsoils to test and analyze their soil and make fertilizer recommendations for their corn crop. Earthsoils did so and represented to the Ptaceks that the nitrogen fertilizer it recommended was sufficient in quality and quantity to produce 180–200 bushels of corn per acre. The Ptaceks purchased and applied the recommended

fertilizer, but their corn crop produced less than one-half of the anticipated yield. The Ptaceks initiated a lawsuit against Earthsoils, claiming breach of contract, consumer misrepresentation, negligence, and breach of warranties. The complaint alleges that Earthsoils supplied nitrogen fertilizer of "inferior quality and insufficient quantity to produce a corn yield of 180–200 bu/ac and as a result, the Ptaceks' corn ... was deficient in nitrogen and averaged a yield of less than one-half of what should have been produced." Earthsoils tendered the defense of the action to Farm Bureau, and Farm Bureau defended Earthsoils under a reservation of rights.

Farm Bureau subsequently initiated this action seeking a declaration that it is not obligated to defend and indemnify Earthsoils under the CGL policy (the policy).[1] Farm Bureau moved for summary judgment. The district court denied the motion and sua sponte granted summary judgment in favor of Earthsoils and the Ptaceks, concluding as a matter of law that the policy covers all of the Ptaceks' claims and Farm Bureau is obligated to both defend and indemnify Earthsoils for any damages awarded on the Ptaceks' claims. This appeal follows.

## ISSUE

Does the insurance policy cover the Ptaceks' claims?

## ANALYSIS

■ On an appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We review de novo whether the district court erred in its application of the law and whether there were any genuine issues of material fact when the evidence is viewed in the light most favorable to the nonmoving party. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76–77 (Minn.2002). We review de novo the interpretation of an insurance policy and its application to the facts of a case. *Franklin v. W. Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 406 (Minn.1998).

■ A liability insurer owes two duties to its insured: a duty to defend and a duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411, 415 (Minn.App. 1993), *review denied* (Minn. Apr. 29, 1993). An insurer's duty to defend is broader than the duty to indemnify. *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997). The duty to defend extends to every claim that arguably falls within the scope of the policy's indemnity coverage and exists regardless of the merits of the underlying claims. *Wooddale Builders, Inc. v. Md. Cas. Co.,* 722 N.W.2d 283, 302 (Minn.2006). Whether the insurer owes a duty to defend is determined by comparing the plain language of the insurance policy to the allegations in the complaint and any extrinsic facts that could bring those allegations within the scope of coverage. *See Thommes v. Milwaukee Ins. Co.,* 641 N.W.2d 877, 880 (Minn.2002); *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1979); *see also Reinsurance Ass'n of Minn. v. Timmer,* 641 N.W.2d 302, 311 (Minn.App.2002) (stating that facts submitted in support of underlying claims may be considered to clarify but not expand the claims asserted in the complaint), *review denied* (Minn. May 14, 2002).

The policy provides that Farm Bureau "will pay those sums that [Earthsoils] be-

---

1. Earthsoils also had a comprehensive catastrophe excess liability policy from Farm Bureau, but the two policies contain identical coverage provisions.

comes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" and must defend Earthsoils "against any 'suit' seeking those damages." The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."[2]

In comparing the Ptaceks' claims to this policy language, we consider both the complaint against Earthsoils and the factual submissions from the underlying action that Earthsoils presented to demonstrate coverage. The Ptaceks allege that the fertilizer Earthsoils recommended provided insufficient nitrogen to their corn crop, which resulted in "lost yield." Supporting affidavits also indicate that the nitrogen deficiency caused the corn plants to develop poorly—they exhibited yellowing of the leaves, an inconsistent growth pattern, and produced less than one-half the number of cobs that were anticipated. But the Ptaceks do not claim that the crop produced less than it would have without the fertilizer or that the corn cobs actually produced were damaged or unmarketable.

■ Farm Bureau argues that these claims do not give rise to a duty to defend or indemnify because less-than-anticipated crop yield constitutes an economic loss, not physical injury to tangible property. Farm Bureau also asserts that Earthsoils' claimed failure to deliver a product of the promised quality is not a covered risk but a business risk that Earthsoils assumed. See Bor–Son Bldg. Corp. v. Emp'rs Commercial Union Ins. Co., 323 N.W.2d 58, 63 (Minn.1982) (adopting doctrine that failure to deliver contracted-for results is an insured's business risk to bear and outside

the scope of CGL coverage). We first consider whether the claims against Earthsoils fall within the policy definition of property damage.

■ The policy does not define the terms "physical injury" and "tangible property." Words not defined in an insurance policy must be given their plain and ordinary meaning. Walker v. State Farm Fire & Cas. Co., 569 N.W.2d 542, 544 (Minn.App.1997), review denied (Minn. Dec. 22, 1997). Tangible ordinarily means "[d]iscernible by the touch; palpable" or "[p]ossible to touch." American Heritage Dictionary 1767 (4th ed.2006). And a physical injury is damage or harm to the physical condition of a thing. See id. at 902 (injury), 1325 (physical). Physical injury to tangible property, therefore, involves damage to the physical condition of a palpable item of property.

■ Consistent with the these definitions, Minnesota law distinguishes between physical injury to tangible property and economic loss; economic losses may be recovered as consequential damages from physical injury to tangible property but do not, in and of themselves, constitute property damage. See Fed. Mut. Ins. Co. v. Concrete Units, Inc., 363 N.W.2d 751, 756 (Minn.1985) (stating that diminution in the value of a structure because of incorporation of defective material may be injury to property but is not "physical injury to tangible property"); Walker, 569 N.W.2d at 544 (concluding that physical currency and promissory note are tangible property, but the economic value of them—the injured property—is not); Tschimperle v. Aetna Cas. & Sur. Co., 529 N.W.2d 421, 425 (Minn.App.1995) (stating that "loss of

**2.** The policy alternatively defines "property damage" as "[l]oss of use of tangible property that is not physically injured." Farm Bureau argues that the Ptaceks' claims fall outside the scope of that provision and within the scope of an exclusion applicable to that provision. Because Earthsoils does not assert that it is entitled to coverage under the loss-of-use provision, we decline to consider these arguments.

investment does not constitute damages to tangible property" but noting that this rule does not preclude an award of consequential economic damages "when there is physical injury to the property itself"), *review denied* (Minn. May 31, 1995). Whether failure to achieve anticipated crop yield constitutes economic loss or physical injury to tangible property is an issue of first impression in Minnesota. We therefore look to the decisions of courts from other jurisdictions that have addressed claims of physical injury to tangible property involving less-than-anticipated agricultural yield.[3] *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 629 (Minn.2007) (stating that caselaw from other states may provide "guidance when our own jurisprudence is undefined").

We turn first to *W. Heritage Ins. Co. v. Green*, where the insureds contracted to apply chemicals to farmland prior to the planting of a potato crop. 137 Idaho 832, 54 P.3d 948, 949 (2002). The machinery used to apply the chemicals malfunctioned, causing some areas of the fields to be skipped and others to be sprayed insufficiently. *Id.* at 949–50. As the potato plants grew, the unsprayed areas were marked by flourishing weeds and potato plants with foliage that "gradually yellowed and started to die." *Id.* at 950. The affected potato plants had poor root systems and produced fewer and poor quality potatoes. *Id.* The potato growers sued, alleging that the error in application caused diminished yield, and the insurer denied coverage. *Id.* Although the Idaho Supreme Court ultimately agreed that there was no coverage because of multiple policy exclusions, it reasoned that the potato plants were tangible property and had

sustained "physical injury" from the fertilizer misapplication in the form of yellowed foliage, poor root systems, and potatoes that were "slimmer, rougher, blemished and hooked on the ends." *Id.* at 952.

The Eighth Circuit applied similar reasoning to a case involving tomato plants in *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786 (8th Cir.2005). The insured in *Ferrell* produced plastic film that was used on the ground to protect growing plants. 393 F.3d at 789. Tomato growers purchased the film, which deteriorated, leaving large holes in some places. *Id.* This made it difficult to irrigate the plants properly and allowed rainwater to splash dirt on the plants. *Id.* As in *Green*, the defect in the insured's product caused damage to the plants themselves, resulting in "stunted plants that produced less fruit, and the tomatoes that did grow were smaller than normal and suffered from sunburn, rain damage, and cracked stems." *Id.* The growers produced evidence that the "quality of the crop with the defective film was worse than if no film had been used at all." *Id.*

The insurer argued that the growers' breach-of-warranty claims were not covered because they alleged "economic losses," rather than "property damage." *Id.* at 793. The Eighth Circuit rejected this argument, concluding that the growers' claims sought damages caused by physical injury to tangible property because "[t]he tomato plants were damaged as a result of [the insured]'s defective film. The plants were stunted, undersized, sunburned, or waterlogged, and they were cracked in parts." *Id.* at 795. On those facts, the court determined that the growers'

---

**3.** The district court concluded that the Ptaceks allege covered property damage largely in reliance on cases that involved a definition of "property damage" that required only injury to tangible property, not *physical* injury to

tangible property. These cases are inapposite. *See Concrete Units*, 363 N.W.2d at 756 (criticizing reliance on a case involving property damage definition that lacked "physical injury" requirement).

claimed "lost profits or diminished gross receipts" were a measure of damages flowing from the covered physical injury to the plants, which "is distinct from the question whether there was 'property damage' under the policy." *Id.*

We also find instructive the reasoning in *Triple U Enters. v. N.H. Ins. Co.,* 576 F.Supp. 798, 806–07 (D.S.D.1983), *aff'd,* 766 F.2d 1278 (8th Cir.1985). In *Triple U,* the insured sold buffalo for breeding that were infected with brucellosis. 576 F.Supp. at 800. The buyers alleged breach of warranty and fraudulent misrepresentation by the insured, based, in relevant part, on "loss of expected calf crops" and diminution in value of the calves born with the disease. *Id.* at 803. As here, the insurance policy defined property damage as physical injury to tangible property. *Id.* at 804. The court concluded that the alleged loss of expected calf crops was not property damage because calves that were never born are not tangible property. *Id.* at 806. But as to calves that were born, the court reasoned that the calves were themselves tangible property, and they were physically injured because the disease they contracted from the purchased buffalo made them unfit for breeding. *Id.* at 806–07.

Comparison of these cases to the Ptaceks' claims highlights the absence of any allegation of physical injury to tangible property. The Ptaceks allege that Earthsoils' fertilizer failed to provide sufficient nitrogen to their corn crop, causing it to produce less than the anticipated yield. But while the Ptaceks emphasize the effect on the appearance and productive capacity of their corn plants, they do not allege that the fertilizer damaged or otherwise rendered unmarketable the corn cobs actually produced. Nor do the Ptaceks allege that Earthsoils' fertilizer physically damaged the corn plants by causing them to produce less than they would have without any fertilizer.[4] The only injury the Ptaceks allege is failure to achieve anticipated crop yield.

■ This does not bring the Ptaceks' claims within the scope of coverage under the policy. Less-than-anticipated crop yield may result from physical injury to tangible property, as in *Green* and *Ferrell,* in which case the difference between the anticipated crop yield and the actual crop yield may provide a measure of damages. But failure to achieve anticipated crop yield is not itself physical injury to tangible property; it is merely injury to an intangible economic interest. As the *Triple U* court reasoned, a crop that never existed does not constitute tangible property. And because the Ptaceks do not claim that they were damaged by any physical injury to the corn plants themselves (their tangible property) we conclude that the claims against Earthsoils assert only economic loss. Accordingly, Farm Bureau has no duty to defend or indemnify Earthsoils.[5]

4. The Ptaceks and Earthsoils compare the Ptaceks' yield to that produced with "normal" or "sufficient" levels of nitrogen, without any evidence defining what those terms mean, and to the yield produced on their neighbors' farms, without any evidence of whether or what type of fertilizer the neighbors used. Neither of these comparisons establishes a baseline from which to conclude that the Ptaceks allege that Earthsoils' fertilizer physically injured their corn plants.

5. Earthsoils argues that Farm Bureau should be estopped from denying coverage under the doctrine of laches because it waited two years to challenge coverage. "[E]stoppel cannot be used to enlarge the coverage of an insurance policy." *Timmer,* 641 N.W.2d at 310. Moreover, Farm Bureau's defense of Earthsoils under a reservation of rights comports with Minnesota law. *See Meadowbrook,* 559 N.W.2d at 416 (holding that an insurer may undertake an insured's defense under a reser-

Having concluded that the claims against Earthsoils do not fall within the policy's coverage, we need not consider Farm Bureau's argument that coverage is precluded under the business-risk doctrine. But we note the argument has merit when, as here, the anticipated yield is defined by a contractual obligation. *See Bor–Son*, 323 N.W.2d at 63 (stating that CGL coverage does not extend to "contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained" (quotation omitted)).

## DECISION

The underlying claims against Earthsoils do not allege damages caused by physical injury to tangible property. Because the claims plainly fall outside the scope of the policy's coverage, Farm Bureau has no duty to defend or indemnify Earthsoils in this case.

**Reversed.**

vation of rights and withdraw if developments in the underlying action indicate the absence of an arguably covered claim).