599 P.2d 1000

Helen POTTER and Neldon Potter, husband and wife, Plaintiffs-Appellants and Cross-Respondents,

v.

Theodore E. MULBERRY and Nora Ann Mulberry, husband and wife, Defendants-Respondents and Cross-Appellants.

No. 12734.

Supreme Court of Idaho.

Sept. 6, 1979.

Dean Williams, of Kerr, Williams & Clarke, Blackfoot, for plaintiffs-appellants and cross-respondents.

Morton B. Hiller, of St. Clair, Hiller, Benjamin, Wood & McGrath, Idaho Falls, for defendants-respondents and cross-appellants.

BISTLINE, Justice.

This personal injury and property damage action arose out of a daylight automobile collision on a through county highway near Idaho Falls, Idaho. Appellant Helen Potter testified to driving south on Jameston Road at 40–45 miles per hour, below the posted speed limit of 50 miles per hour. As she approached the Cotton Road intersection, on her left she saw respondent Mulberry's car (operated by Nora Ann Mulberry) stopped at a stop sign on the east side of Jameston Road. Mrs. Potter testified there was a car coming from the south and Mrs. Mulberry was looking in that direction as she drove into the intersection in front of the oncoming Potter car. Mrs. Potter slammed on her brakes, leaving 29 feet of skid marks, but was unable to avoid the collision. The point of impact was in Potter's lane of travel which was the west lane of Jameston Road. Mrs. Mulberry was Mulberrys' only witness as to how the collision happened. She testified that she waited until the northbound car mentioned by Mrs. Potter passed the intersection, and then, after looking both ways, proceeded into the intersection at a moderate rate of speed. Mrs. Mulberry testified that she did not see the Potter car while stopped at the stop sign, from where she traveled entirely across the east lane of Jameston Road still without seeing the Potter car. At the point where the accident occurred Jameston Road (traveled by Mrs. Potter) is a through road with stop signs on both sides of the intersection. The only obstructions which might be said to have blocked Mrs. Mulberry's view up and down Jameston Road before entering into the intersection were a stop sign and a telephone pole on the northeast corner. The evidence also showed the presence of a canal bank which might have served as an obstruction to Mrs. Mulberry's vision some distance back from the stop sign where she brought her car to a halt.

Gary Wells, who possessed a Ph.D. in finance, was called to testify as to the value of the plaintiff's lost services as a housewife. A defense objection on the grounds that such evidence was incompetent was sustained and an offer of proof denied on the basis that the jury is equally competent as the witness, expert testimony in this area not being necessary.

The jury in a special verdict found both Mrs. Mulberry and Mrs. Potter negligent in causing the collision. Negligence was attributed 40% to Mrs. Potter and 60% to Mrs. Mulberry. The Potter property damage was set at $1,315 and Mrs. Potter's personal injury damages at $5,000. Judgment in favor of Potters for $3,789 was entered. Mulberrys filed a motion to reduce the awarded damages by $1,971.54 by reason of previous payments made by Mulberrys' insurance company to pay Mrs. Potter's medical expenses and for the Potters' property damage. Potters filed a $1,059 cost bill and also claimed attorney's fees. Potters also filed a motion for judgment notwithstanding the verdict contending that Mrs. Potter was guilty of no causative negligence, and hence Mrs. Mulberry's negligence in causing the accident was 100%, and also urging that Mrs. Potter's damages were greater than those awarded by the jury. Alternatively, Potters requested a new trial based on grounds that the court had improperly instructed the jury and the jury did not follow all of the court's instructions.

All motions were denied. The Potters appealed; the Mulberrys cross-appealed.

■ We agree with the Potters that there was not sufficient evidence here to

sustain the jury verdict that Mrs. Potter was at all responsible for the collision. This was a through highway for Mrs. Potter. For Mrs. Mulberry it was a stop intersection. I.C. § 49–729(b) is applicable here, and provides direction in considering the issue of Mrs. Potter's responsibility for the collision:

"[E]very driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop as required by section 49–751 *and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another roadway or which is approaching so closely on said roadway as to constitute an immediate* hazard, . . ."

I.C. § 49–751(d), also applicable, states: "[E]very driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection or in the event there is no crosswalk *shall stop* at a clearly marked stop line, but if none, then *at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection.*"

In *Foster v. Thomas,* 85 Idaho 565, 572, 382 P.2d 792, 796 (1963), where an automobile coming from a stop sign collided with a motorbike being driven on a through street, this Court said:

"Under the provisions of I.C. § 49–729, it was the duty of respondent to yield the right of way to any vehicle which was approaching on the highway so closely as to constitute an immediate hazard. *If appellant was observing traffic regulations as he proceeded to the intersection he was entitled to assume that anyone approaching or entering the same would comply with said statute. Coughran v. Hickox,* 82 Idaho 18, 348 P.2d 724." (Emphasis added)

There is no evidence that Mrs. Potter was not observing traffic regulations as she proceeded down Jameston Road. In fact, her uncontradicted testimony was that she was driving 5 to 10 miles per hour below the posted speed limit. There were no unusual weather or road conditions that would have necessitated driving at a slower speed.

Mrs. Potter was entitled to assume that Mrs. Mulberry would comply with the statutes. In *Stucki v. Loveland,* 93 Idaho 253, 257, 460 P.2d 388, 392 (1969), it was said:

"I.C. § 49–751(d) places the duty upon the driver of the vehicle approaching the stop sign to stop before entering the controlled intersection. Other vehicles approaching such a controlled intersection are entitled to rely upon the mandatory provisions of that statute. (Citations omitted) It is the duty of the driver approaching the stop sign to come to a halt and determine if it is safe to proceed across the highway; *it is not the duty of the driver of the vehicle on the sign-protected through highway to assume drivers will violate such a mandatory statutory duty.* (Citations omitted)

"In this case where there was a direct violation of the mandatory provisions of the statute and no explanation or justification offered for such violation, the proximate cause of the accident could not be attributed to anything other than the failure of the driver of the Loveland vehicle to stop at the stop sign before proceeding through the intersection. (Citations omitted) *It is our conclusion that there were no actions on the part of respondent Hahn that could be considered as a proximate cause of the accident.* (Emphasis added)

Likewise, there is no evidence in this record which will sustain a jury finding of actions on the part of Mrs. Potter which could be considered as a proximate cause of the collision. The motion for judgment notwithstanding the verdict should have been granted.

A second issue on appeal raised by the Potters is whether the trial court erred in excluding the testimony of her expert witness, an economic consultant, pertaining to the value of Mrs. Potter's lost services and earnings, and loss of future earning capacity.

"An expert generally is one possessing skills or knowledge beyond the competency of the average juror. *Sturgis v. Garrett,* 85 Idaho 364, 379 P.2d 658 (1963). Admissibility of expert opinion testimony is discretionary with the trial court and will not be disturbed absent a showing of an abuse of discretion. *Davis v. Nelson-Deppe, Inc.,* 91 Idaho 463, 424 P.2d 733 (1967); 31 Am.Jur.2d *Expert and Opinion Evidence* § 3 (1967). The test for determining whether to allow an expert to testify was enunciated by this court in *Bean v. Diamond Alkali Co.,* 93 Idaho 32, 35, 454 P.2d 69, 72 (1969): 'A person possessing skill or knowledge qualifying him as an expert is generally allowed to express his opinion as to matters in issue when an opinion would be of appreciable help to the jury in finding the facts. 7 Wigmore on Evidence § 1923, p. 21 (3d ed. 1940); *Greenstreet v. Greenstreet* [65 Idaho 36, 139 P.2d 239 (1943)]; *Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 408 P.2d 697 (Kan.1965).' "

*Stoddard v. Nelson,* 99 Idaho 293, 297–298, 581 P.2d 339, 343–344 (1978).

The value of one's earning capacity is ordinarily determined from proven facts of age and capacity, state of health, present income, and other relevant facts, rather than from the estimates and opinions of witnesses. One of the texts distinguishes between expert and non-expert testimony, saying that where opinion testimony is to be admitted, the circumstances should be such that the opinion testimony may be helpful to a jury in deciding the issue, and it is made to appear that there is a reliable basis for the opinion rendered, that is to say, the witness must show some knowledge of the value of the services of the kind in question. 31 Am.Jur.2d *Expert and Opinion Evidence* § 144 (1967). *See* 32 C.J.S. *Evidence* § 546 (124). Potters point out that in several cases expert testimony on the value of a housewife's services has been held to be an aid to the jury and was properly admitted into evidence. Based on the facts of this case, we are not persuaded that the trial court abused his discretion in refusing to allow Potters' expert witness to testify as to the value of Mrs. Potter's lost services.

The Potters also contend that the trial court committed a number of errors in instructing the jury. We have closely examined the instructions given, and those requested by Potters and refused, or not given as covered, and find that the instructions, taken as a whole, fairly and adequately informed the jury on the law applicable to the case and the function of the jury. One requested instruction which was not given was:

"You are instructed, that an injured person may recover for any damage to his earning capacity even though he was not actually employed or intending to seek work at the time of his injury. The measure of damages for this element is the difference between the amount he was capable of earning before the injury and that which he is capable of earning thereafter."

The second sentence of that instruction was well covered by the trial court's given instructions. As to the first sentence, the court more than adequately instructed that an injured person may recover damages for impairment to his earning capacity. The balance of the first sentence of this instruction was not specifically covered, and probably should have been given. However, we do not think the failure to give it was reversible error. The instructions as a whole were sufficient, and, we believe of sufficient latitude that the Potters were not deprived of an opportunity in final summation to argue the substance of the omitted sentence to the jury.

Potter's last pertinent assignment of error is that the trial court erred in not awarding her attorneys fees pursuant to § 12–121 I.C. Based upon the facts of this case, we cannot find that the trial court abused its discretion in not awarding attorneys fees.

Mulberrys argue that by virtue of I.C. § 41–1840 the trial court erred in refusing to allow the jury verdict to be reduced by the amount of defendant's insurers pre-trial payments to the Potters.

Section 41–1840 I.C.[1] is applicable. Ample evidence in the record shows that Mulberrys' insurer made payments to or for the Potters with respect to property damage and Helen Potter's medical bills. There is no contention that these payments were not received, or that the same were not for the benefit of the Potters. We conclude that these payments should have been credited against the jury verdict in entering judgment.

The court having erred in denying plaintiffs' motion for a judgment notwithstanding the verdict and denying defendants' motion for credit of payments made in entering judgment, the judgment is reversed and the cause remanded to the trial court for entry of a new judgment consonant with the views herein expressed. No costs allowed.

McFADDEN and BAKES, JJ., concur.

DONALDSON, Chief Justice, concurring and dissenting.

I concur in all of the holdings of the majority opinion except as to its finding that the trial court erred in denying plaintiffs' motion for judgment notwithstanding the verdict. I have reviewed the testimony and believe that there was sufficient competent evidence to sustain the verdict of the jury and that the trial court was correct in denying the motion for judgment notwithstanding the verdict.

SHEPARD, J., concurs.

---

1. § 41–1840 I.C.:

   (1) No payment or payments made by any person, or by his insurer by virtue of an insurance policy, on account of bodily injury or death or damage to or loss of property of another, shall constitute an admission of liability or waiver of defense as to such injury, death, loss or damage, or be admissible in evidence in any action brought against the insured person or his insurer for damages, indemnity or benefits arising out of such injury, death, loss or damage unless pleaded as a defense to the action.

   (2) All such payments shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefore in such an action against, the payor or his insurer, and in favor of any person to whom or on whose account payment was made.