109 P.3d 1098

**Paula SCHAFFER and William A. Schaffer, wife and husband, Plaintiffs–Appellants,**

v.

**Misty CURTIS–PERRIN and John Doe Perrin, wife and husband, Defendants–Respondents.**

No. 30452.

Supreme Court of Idaho.
Boise, March 2005 Term.

March 25, 2005.

Owens, James, Vernon & Weeks, P.A., Coeur d'Alene, for appellants. Craig K. Vernon argued.

Elam & Burke, P.A., Boise, for respondents. Jeffrey A. Thomson argued.

JONES, Justice.

Paula and William Schaffer appeal the district court's Order Amending Judgment, which reduced their jury award under I.C. § 41–1840. At issue are (1) whether respondent Misty Curtis–Perrin's insurance company paid the expenses for which she sought the credit; and (2) whether the district court erred in deducting medical expenses from a general verdict where those medical expenses were sought at trial.

## I.

### BACKGROUND

Curtis–Perrin crashed her car into Paula Schaffer's car on July 20, 2001, and Schaffer was injured. Both Schaffer and Curtis–Perrin were insured by State Farm. Schaffer was paid $9,854.97 under her policy for certain of her medical expenses. Schaffer filed suit on August 16, 2002, seeking damages for her personal injuries. On November 26, 2002, Curtis–Perrin's claims representative received a subrogation claim from Schaffer's claims representative. On December 24, 2002, Curtis–Perrin's claims representative tendered a check in the amount of $7,500, which was accepted "in full settlement" of the subrogation claim.

The case was tried to a jury, which returned a verdict in Schaffer's favor on September 12, 2003. The jury found Curtis–Perrin 100 percent at fault and awarded Schaffer $100,000 in total damages. The jury did not, however, specify how much (if any) was for medical expenses. The district court entered a judgment on that verdict. Upon Curtis–Perrin's motion to reduce the verdict pursuant to I.C. § 41–1840, the court heard the parties' arguments. It concluded that Curtis–Perrin's insurance company was entitled to a credit under section 41–1840, and ordered that the entire $9,854.97 be deducted from the judgment. Schaffer appealed.

## II.

### STANDARD OF REVIEW

We review orders on motions to amend judgments for an abuse of discretion. *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 707, 979 P.2d 107, 109 (1999). This requires us to conduct a three-part inquiry: (1) whether the trial court correctly perceived the issues as ones of discretion; (2) whether the trial court acted within the outer boundaries of that discretion and consistent with the legal principles applicable to specific choices; and (3) whether the trial court's decision was a product of reasoned decision-making. *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). If the answers to those three queries are affirmative, we will not disturb the trial court's decision. *Id.*, 803 P.2d at 1000.

## III.

### DISCUSSION

### A. Curtis–Perrin's Insurance Company "Paid" $7,500.

Each party contends her insurance company paid the $9,854.97 in pre-verdict

medical expenses. Idaho Code § 41–1840 provides:

(1) No payment or payments made by any person or by his insurer by virtue of an insurance policy, on account of bodily injury or death or damage to or loss of property of another, shall constitute an admission of liability or waiver of defense as to such injury, death, loss or damage, or be admissible in any action brought against the insured person or his insurer for damages, indemnity or benefits arising out of such injury, death, loss or damage unless pleaded as a defense to the action.

(2) All such payments shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefore in such an action against, the payor or his insurer, and in favor of any person to whom or on whose account payment was made.

If Schaffer's insurance company paid the medical expenses, Curtis–Perrin was not entitled to a credit. If, on the other hand, Curtis–Perrin's insurance company paid the medical expenses, Curtis–Perrin was entitled to a credit under section 41–1840.

The district court did not identify any particular facts in concluding that the $9,854.97 had been paid by Curtis–Perrin's insurance company. However, it is clear that $7,500 was paid from Curtis–Perrin's account to Schaffer's account. William Holstein, Curtis–Perrin's State Farm claims representative, explained that the subrogation claim came from "plaintiff's insurance company, State Farm Mutual Automobile Insurance Company", as though the two were different entities. The check was written by Mr. Holstein, payable on the account of "State Farm Mutual Automobile Insurance Company" of Salem, Oregon. It was payable to "State Farm Insurance Co." of Coeur d'Alene. At oral argument, Curtis–Perrin's counsel affirmed that each party's State Farm was the same company.

■ Idaho's appellate courts have yet to consider the applicability of section 41–1840 in such a situation. We see no reason for not applying the section. Thus, even where plaintiff's and defendant's insurance carriers are the same, and an amount is paid from defendant's account to plaintiff's account, defendant is entitled to the credit regardless of whether the parties were insured by the same company. Whatever corporate umbrella Schaffer and Curtis–Perrin may have shared, the two clearly had separate accounts; thus, the effect is the same as if they were insured by different companies.

■ Schaffer points out that Curtis–Perrin's claims representative did not pay the $7,500 until nearly a year and a half after the accident. She claims the purpose of the statute—to encourage tortfeasors and their insurers to alleviate financial hardship on accident victims, see *Turner v. Willis*, 116 Idaho 682, 685, 778 P.2d 804, 807 (1989)—is not served by allowing a credit for expenses paid where the payment is not made until long after the plaintiff's carrier has paid plaintiff. The statute, however, does not prescribe a timeline that defendant must follow in order to receive the credit. It simply refers to a "payment or payments made by any person or by his insurer by virtue of an insurance policy, on account of bodily injury ... of another." I.C. § 41–1840(1). The legislature could have required a certain level of promptness. It did not. Therefore, we conclude that simply because Schaffer's insurance company paid the expenses first and Curtis–Perrin's claims representative waited a year and a half to reimburse Schaffer's carrier is of no moment to the issue of Curtis–Perrin's entitlement to a credit.

■ Assuming Curtis–Perrin is entitled to the credit, the question becomes how much? Curtis–Perrin's claims representative actually paid $7,500. Even though the $7,500 represents settlement of a $9,854.97 claim, the statute refers to "payment or payments." The statute says nothing about allowing defendant a credit for any amount beyond what she or her carrier actually paid. The actual amount of the payment made by Curtis–Perrin's carrier was $7,500 and that is the appropriate amount of the credit.

**B. The District Court did not Err in Granting the I.C. § 41–1840 Credit for Medical Expenses from a General Verdict.**

■ Under section 41–1840, all payments made by a defendant on account of bodily

injury or death or damage to or loss of property of another "shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefore ..." Our Court of Appeals has read this section to mean that defendant's credit is limited to those payments that defendant made and which plaintiff sought and recovered at trial. *Beale v. Speck*, 127 Idaho 521, 538, 903 P.2d 110, 127 (Ct.App.1995). We believe this reading to be sound. The record discloses that Schaffer's claim for medical expenses included those which were prepaid. The parties agree that she presented the jury with evidence of roughly $26,000 in medical expenses. Our inquiry, then, is whether Schaffer's award included the medical expenses prepaid by Curtis–Perrin.

On the verdict form, the jury was asked to allocate the respective percentages of fault and simply identify Schaffer's "total amount of damages." The jury attributed 100 percent of the fault to Curtis–Perrin and awarded Schaffer $100,000. In crediting the expenses prepaid by Curtis–Perrin, the district judge explained his decision as follows:

> [T]he jury did have an opportunity to consider medical bills and expenses as to whether they were reasonably related to the accident. They came up with a sum of $100,000, which could reasonably be inferred to encompass all of the $26,029.11 that [was] set forth in plaintiffs' offer and compilation of billings in Exhibit 13 as well as an amount of compensatory general damages. While the court does not have a special verdict form that delineate[s] precisely whether they considered and grant[ed] all those, I think from the court's review of the case and the evidence that was submitted in the final verdict, that the court can safely conclude that the amount of money that was paid out by defendant's insurance company to the plaintiffs' insurance company in subrogation was in fact for medical expenses that were ultimately awarded and encompassed in the jury verdict.

Schaffer argues that Curtis–Perrin was not entitled to any credit because the court could not determine what amounts in the jury's verdict, if any, were for expenses subject to be being credited (creditable expenses). The only way to know what amounts were for creditable expenses, she contends, was for Curtis–Perrin to submit a jury verdict form identifying those portions of the award that covered such expenses. Curtis–Perrin counters that this Court has never required a verdict form identifying which portion of an award is for creditable expenses and which is not.

We have not required defendants to submit special verdict forms when both creditable and non-creditable expenses are sought. The three cases Curtis–Perrin relies on, *Beale v. Speck, supra, Potter v. Mulberry*, 100 Idaho 429, 599 P.2d 1000 (1979) and *Leavitt v. Swain*, 133 Idaho 624, 991 P.2d 349 (1999), simply reaffirm the general rule in the statute but do not get into the question of how to identify creditable expenses. In *Beale*, the defendant reimbursed plaintiffs for daycare wages, house cleaning services, and towing. 127 Idaho at 537, 903 P.2d at 126. Plaintiffs did not seek those expenses at trial. *Id.* at 538, 903 P.2d at 127. The trial court ruled that whether plaintiffs sought those expenses at trial was irrelevant; defendant was entitled under the statute to a credit for any and all prepaid expenses. *Id.*, 903 P.2d at 127. The Court of Appeals disagreed and, as noted above, held that a defendant is entitled to the credit for prepaid expenses only if plaintiff seeks and recovers those expenses at trial. *Id.*, 903 P.2d at 127. The issue of how to identify the prepaid expenses to be deducted from a general verdict was not before the court.

Nor was the issue presented in *Potter*. The jury returned a verdict awarding plaintiff $1,315 for property damage and $5,000 for "personal injury damages." 100 Idaho at 430, 599 P.2d at 1001. Defendant had paid plaintiff some amount for medical expenses and some for property damage. *Id.* at 432, 599 P.2d at 1003. The district court refused to reduce the award under I.C. § 41–1840 (though it was not said why). On appeal we reversed, noting "[a]mple evidence in the record show[ed] that [defendant's] insurer made payments to or for the Potters with respect to property damage and [plaintiff's] medical

bills." *Id.* at 433, 599 P.2d at 1004. The opinion did not disclose how much had been paid and, apparently, the question of how to identify how much of plaintiff's "personal injury" damages included creditable expenses was not raised.

The same non-treatment of the issue exists in *Leavitt.* Plaintiff sued and sought reimbursement for medical expenses and damages for pain and suffering and loss of past and future earning capacity. 133 Idaho at 626–27, 991 P.2d at 351–53. Defendant's insurance company had paid $7,000 of plaintiff's medical expenses prior to trial. *Id.* at 632, 991 P.2d at 357. In affirming the lower court's order reducing the award for medical payments, the opinion announced only that "[w]hen a party makes pre-litigation payments to the other side, the paying party is allowed to subtract those payments from the jury's verdict." *Id.*, 991 P.2d at 357. Again, no special verdict form was required, but neither was the issue raised.

Schaffer raises a good point. Obviously, it is impossible to know with absolute certainty whether, or to what extent, the jury's award included the medical expenses for which Schaffer was already reimbursed by Curtis–Perrin's carrier. Accordingly, whether we grant the credit or do not grant the credit, either alternative carries a certain risk of error. Grant the credit, and we risk erroneously depriving Schaffer of part of her general damages award—the sum the jury determined would be just and proper under all the circumstances. *Owen v. Taylor,* 62 Idaho 408, 114 P.2d 258 (1941). Refuse to grant the credit, and we risk erroneously denying Curtis–Perrin her statutory right to a credit for the expenses her carrier paid and which plaintiff recovered at trial. Nevertheless, we can in this case, on these facts, affirm the district court's ruling with little risk that doing so will erroneously tap into Schaffer's general damages award. A decision of the Supreme Court of Montana, employing essentially the same approach the district court used in this case, guides the way.

In *Cottrell v. Burlington Northern R.R. Co.,* 261 Mont. 296, 863 P.2d 381 (1993), the plaintiff, an employee of the defendant, was injured on the job while operating some equipment. 863 P.2d at 383. His employer advanced him funds for, among other things, wage benefits totaling approximately $300,000. *Id.* at 389. At trial, the plaintiff sought recovery for wage loss totaling more than $862,000 and general damages between $700,000 and $1 million. *Id.* The opinion did not say whether evidence of the employer's payments was introduced. The jury awarded plaintiff a total of $1,362,236, but did not specify whether any portion covered wage loss. *Id.* Defendant sought a credit for the wage loss funds it advanced and the plaintiff lodged precisely the same sort of objection Schaffer lodges here—that the court could not possibly know whether any amounts were awarded for wage loss. The court acknowledged it could not know for sure whether any amounts were for wage loss, but granted the credit anyway, reasoning as follows:

> [T]he jury's verdict was for an amount in excess of $1.3 million. [The plaintiff] claimed wage loss in the amount of $862,230, and general damages of from $700,000 to $1,000,000 for pain and suffering. By logical deduction, at least $300,000 of [the plaintiff's] recovery had to be compensation for wage loss.

*Id.* at 389.

The same reasoning is appropriate in this case. Here, Schaffer sought approximately $26,000 in medical expenses, which included the expenses sought to be credited. Where the jury's verdict substantially exceeded all the medical expenses Schaffer was seeking, it is fairly certain that the award included the expenses for which Curtis–Perrin seeks a credit. While it may be within the realm of possibility that the jury did not award all of the medical expenses sought, or even part of the specific expenses that are sought to be credited, it is more logical to say that the jury awarded all of the medical expenses sought, including all of those sought to be credited.

It is obvious that no hard and fast rule can be fashioned that will result in absolute certainty in this or any future case. In the final analysis, this is a determination to be properly made in the first instance by the district court, which is best positioned to make a determination based on first-hand observation of the proceedings. Here, the district court made a reasoned decision based on the facts before it and, therefore, we will not

second guess the factual determination. While the district court was correct in determining that Curtis–Perrin was entitled to the credit, it allowed a credit in excess of the amount actually paid.

## IV.

### ATTORNEY FEES ON APPEAL

Curtis–Perrin seeks attorney fees on appeal pursuant to Idaho Code § 12–121 and I.A.R. 41, claiming that "the law regarding credits against a judgment is well-settled and the Appellants have made no substantial showing that the district court misapplied the law." *Bowles v. Pro Indiviso, Inc.*, 132 Idaho 371, 973 P.2d 142 (1999). However, we have determined that the district court did not correctly apply the law and, therefore, attorney fees on appeal are inappropriate. Given the mixed outcome of this case, we do not award costs to either party.

## V.

### CONCLUSION

The Order Amending Judgment is vacated in part and the case is remanded. No costs are awarded to either party on appeal.

Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK concur.