200 P.3d 1191

Robert J. CARLSON, Plaintiff–Appellant,

v.

Brandon M. STANGER; Paul Stanger and Jane Doe Stanger, Defendants–Respondents.

No. 33607.

Court of Appeals of Idaho.

Nov. 14, 2008.

Review Denied Jan. 26, 2009.

M. Brent Morgan, Chtd., Pocatello, for appellant.

Robert C. Montgomery, Boise, for respondent.

PERRY, Judge.

Robert J. Carlson appeals from a judgment awarding damages in a personal injury action. Specifically, Carlson challenges the district court's orders denying his motions for a directed verdict; judgment notwithstanding the verdict (j.n.o.v.); an additur or, in the alternative, new trial; and an award of costs to Brandon Stanger. Carlson also argues he is entitled to attorney fees on this appeal. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

On June 7, 2002, there was a car accident at an uncontrolled intersection in Pocatello. Stanger was ticketed for failing to yield the right of way, pled guilty, and was assessed a fine. In May 2004, Carlson filed a complaint alleging that Stanger's negligence proximately caused the accident and physical injuries to Carlson's neck, back, shoulders, and legs. Stanger filed an answer asserting the defense of comparative negligence and requesting a jury trial. In October 2005, Stanger presented Carlson with an offer of judgment for $12,000, but that offer included $5,000 that Stanger's insurance carrier had already paid to Carlson's insurance carrier as reimbursement for sums paid under Carlson's medical coverage. The offer was not accepted. A three-day jury trial was held in April 2006.

At trial, Carlson testified that, approximately twenty yards before reaching the uncontrolled intersection, he observed Stanger's vehicle [1] traveling toward the intersection—approximately two-thirds to three-fourths of the way down the block to Carlson's left. Carlson was looking to his right as he entered the uncontrolled intersection and did not look back to his left until just before Stanger's vehicle struck Carlson's vehicle near the driver's side back tire. Stanger admitted to speeding—traveling between 30 and 32 mph in a 25 mph zone, not paying attention, and failing to yield the right of way.

Carlson's treating physician and two other doctors testified at trial. All three doctors agreed that Carlson suffered from a pre-existing degenerative disease in his back and neck, but they disagreed as to what injuries or exacerbation of those pre-existing conditions were caused by the accident. Carlson testified that he had injured his back and undergone surgery in 1986, which resulted in a $350,000 settlement from his employer. Carlson testified that, between the time of

the accident at issue in this case and trial, he had seen four doctors for treatment, consultation, and services; undergone cervical surgery on his neck; and accumulated $72,156.80 in medical expenses as a result of the accident. Carlson's treating physician testified that all of the medical expenses were necessarily and reasonably incurred. Stanger's first medical expert testified that the accident caused only minor soft tissue injuries and that Carlson's pre-existing condition likely returned to its baseline by September 10, 2002. Stanger's second medical expert testified that Carlson's records revealed a history of seven motor vehicle accidents and that the accident in this case caused a temporary aggravation to the pre-existing condition of Carlson's back and temporary minor strain to his neck and that Carlson's symptoms returned to their baseline conditions by January 2003.

Carlson moved for a directed verdict on the issue of negligence contending that the evidence demonstrated Stanger was 100 percent liable for the accident. The district court denied Carlson's motion. The jury returned a verdict for Carlson in the amount of $6,649 for actual medical expenses, $2,250 for lost wages, $4,450 for past pain and suffering, and $0 for loss of enjoyment of life. However, the jury also found Carlson 30 percent negligent in causing the accident and, therefore, his total award of $13,349 was reduced to $9,344.30. Carlson filed motions for entry of j.n.o.v. and additur or, in the alternative, a new trial. The district court denied these motions. The district court determined that Stanger was the prevailing party and he was awarded costs. Carlson appeals.

## II.

## ANALYSIS

### A. Directed Verdict

Carlson asserts that the district court erred in denying his motion for a directed verdict on the issue of comparative negligence because there was not substantial evi-

---

1. The vehicle Brandon Stanger was driving was owned and insured by his parents, Paul Stanger and Jane Doe Stanger. Therefore, his parents were also named as defendants and remain par-

ties on appeal. However, when we refer to Stanger in this opinion we are referring to Brandon Stanger, the driver of the vehicle that collided with Carlson.

dence that he was contributorily negligent. Stanger counters that Carlson breached his duty to see and be cognizant of that which was plainly visible or obviously apparent.

Whether a verdict should be directed is purely a question of law upon which the parties are entitled to full review by the appellate court without special deference to the views of the trial court. On review, we apply the same standard that governed the trial court's decision—whether, viewing the evidence in the record in the light most favorable to the nonmoving party, there is substantial evidence upon which a jury could have properly found in favor of the nonmoving party. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986); *City of Lewiston v. Lindsey*, 123 Idaho 851, 854, 853 P.2d 596, 599 (Ct.App.1993).

■ A driver owes a duty to vigilantly watch for other vehicles on the roadways. *Vaughn v. Porter*, 140 Idaho 470, 473, 95 P.3d 88, 91 (Ct.App.2004). In that case, there was an accident at an uncontrolled intersection. After trial, the jury found that the plaintiff and the defendant were equally at fault. The plaintiff—Vaughn—moved for j.n.o.v. and for a new trial on the issue of comparative negligence. Specifically, Vaughn asserted that, because Porter had a statutory duty to yield the right of way at the uncontrolled intersection, she had no duty to look to her left as she approached the intersection. To support her argument, Vaughn relied on a statement that "a driver has the right to assume other drivers are exercising reasonable care on the highways by obeying the rules of the road." *Quick*, 111 Idaho at 764, 727 P.2d at 1192. However, this Court concluded that the statement from *Quick* on which Vaughn relied did not "eliminate a driver's duty to keep a lookout for other vehicles, including those that may be operated in violation of the law." *Vaughn*, 140 Idaho at 473, 95 P.3d at 91. This Court noted that every driver should be aware of the risk that another vehicle will approach an uncontrolled intersection at the same time as the driver. This Court also noted that Vaughn likely could have avoided the accident if she had kept a proper lookout and, furthermore, that she was on notice that

Porter might not yield because, if she had looked to her left, she could have seen Porter approaching the intersection at a speed that was inconsistent with the expectation that he would yield. *Id.* at 474, 95 P.3d at 92. Therefore, this Court concluded that Vaughn breached her common-law duty to keep a proper lookout and that the jury was entitled to conclude that Vaughn was partially at fault.

In this case, much like the plaintiff in *Vaughn*, Carlson contends that he "had the right to assume that Stanger would follow the law and yield the right of way." Carlson also contends that he had adequately performed his duty of care by looking left, observing Stanger's vehicle, and determining it was safe to enter the intersection and that he had no duty to look back to the left before actually entering the intersection.

At trial, Carlson testified that he had driven for thirty-six years at the time of the accident and that he approached blind intersections at a speed he could stop at. Carlson explained that "I know cars can come from nowhere fast and—so I have had a lot of near misses and I knew that you have to go at a speed where you can stop if you need to." Carlson conceded that he was looking to the right as he entered the intersection and he "was completely surprised that [Stanger] was even there." The police officer who cited Stanger for failure to yield testified that Carlson's and Stanger's vehicles arrived at the uncontrolled intersection at approximately the same time. Stanger testified that when he first noticed Carlson, Carlson was "just looking straight. [Carlson] didn't appear to have been slowing down or to have slowed down.... [Carlson] was just looking forward and I imagine when he heard me hitting my brakes, he turned and, of course, had an instant look of shock and surprise on his face."

Viewing the evidence in the record in the light most favorable to the nonmoving party—Stanger—we conclude that there was substantial evidence presented to the jury from which it could determine that Carlson breached his duty of care to vigilantly watch for other vehicles on the roadway and to respond to those other vehicles accordingly.

Therefore, we decline to conclude that a directed verdict should have been ordered on Carlson's behalf regarding comparative negligence.

## B. Judgment Notwithstanding the Verdict

Carlson argues that the district court erred in denying two motions for judgment notwithstanding the verdict. Carlson claims he was entitled to j.n.o.v. on the issues of comparative negligence and damages.

In determining whether the motion for j.n.o.v. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally. *Quick,* 111 Idaho 759, at 727 P.2d at 1192. The issue to be determined on a motion for j.n.o.v. is whether substantial evidence supports the jury's verdict. *Lanham v. Idaho Power Co.,* 130 Idaho 486, 495, 943 P.2d 912, 921 (1997). Substantial evidence does not require that the evidence be uncontradicted. *Highland Enterprises, Inc., v. Barker,* 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999). Rather, the evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. *Id.* Upon a motion for j.n.o.v., the moving party admits the truth of all adverse evidence and all inferences that can legitimately be drawn from it. *Id.* In ruling on a motion for j.n.o.v., the trial court cannot weigh the evidence, assess the credibility of the witnesses, or make its own factual findings and compare them to those of the jury. *Id.* The trial court draws all inferences in favor of the nonmoving party. *Id.* The motion should be granted only where there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict. Id. The function of a j.n.o.v. is to give the trial court the last opportunity to order the judgment that the law requires. *Quick,* 111 Idaho at 764, 727 P.2d at 1192.

### 1. Comparative negligence

Relying on the same evidence and law used to support his argument for a directed verdict, Carlson contends that the district court erred in denying his motion for j.n.o.v. on the issue of comparative negligence. When a court reviews a motion for j.n.o.v. under I.R.C.P. 50(b), the motion is treated as a delayed motion for a directed verdict, and the reviewing court applies the same standard for both. *Leavitt v. Swain,* 133 Idaho 624, 628, 991 P.2d 349, 353 (1999); *Quick,* 111 Idaho at 764, 727 P.2d at 1192. We have already rejected Carlson's claim that he was entitled to a directed verdict. For the same reasons, we conclude that there was no error in the district court's denial of Carlson's motion for j.n.o.v. on the issue of comparative negligence.

### 2. Damages

Carlson claims that he is entitled to j.n.o.v. on several aspects of damages. Specifically, Carlson contends that it was Stanger's burden to prove any apportionment between Carlson's pre-existing condition and the injuries suffered as a result of this accident. Carlson argues that Stanger did not produce any evidence on the issue of apportionment. Therefore, Carlson asserts he is entitled to judgment notwithstanding the verdict for all his claimed medical expenses as well as a minimum of $6,649 in pain and suffering and some award for loss of enjoyment of life.

Although there was no evidence regarding apportionment in the form of what percentage of the damages were attributable to this accident versus that percentage attributable to a pre-existing condition, there was substantial evidence presented to the jury regarding apportionment in general. At trial, Stanger elicited testimony from two expert witnesses regarding Carlson's medical expenses and whether they were incurred solely as a result of this accident.

Stanger's first medical expert testified that the accident caused only "minor soft tissue injuries of the neck and back" and that Carlson's pre-existing condition likely returned to its baseline by September 10, 2002. With regard to Carlson's back, Stanger's first expert testified that the majority of the treatment was for a pre-existing condition as evidenced by Carlson's back surgery in 1986, the intervening years of back treatment, and

Carlson's treatment for his back several weeks before this accident. With regard to Carlson's neck, this expert testified that the bulk of the treatment expense, including the surgery in January 2004, was "[a]bsolutely not" reasonably related to the accident.

Stanger's second medical expert testified that Carlson's records revealed a history of "seven motor vehicle accidents—at least, six of them occurring after his 1986 [back] surgery." This expert testified that Carlson had temporary aggravation to the pre-existing condition of his back, temporary minor strain to his neck, and that Carlson's symptoms returned to their baseline conditions by January 2003 after the accident. In addition to Carlson's own detailed testimony regarding several car accidents, two previous back injuries in 1983, a back injury in 1986 that required surgery, hip replacement in 1997 and neck pain for most of his adult life, Stanger's two medical experts presented substantial evidence regarding Carlson's pre-existing conditions and his course of treatment of those conditions before and after the accident in this case. Even Carlson's treating physician testified that he thought it was likely that Carlson would have required an additional spine surgery without having been in this accident. Despite Carlson's argument to the contrary, there was substantial evidence presented to the jury regarding apportionment for medical expenses related to the treatment of Carlson's lower back, medical expenses related to the treatment of his neck, pharmaceutical costs, and post-surgery physical therapy costs for treatment of his neck.

■ Next, Carlson argues that Stanger conceded during closing argument that he, Carlson, was entitled to minimum of $6,649 in pain and suffering. Therefore, Carlson asserts that he was entitled to judgment notwithstanding the verdict because there was not substantial evidence presented to the jury for it to arrive at the figure of $4,450. Stanger responds that no such concession was made; rather, Stanger offered a suggestion or guideline for the jury to use in determining what to award in pain and suffering.

During closing argument, Carlson offered the jury a suggestion that an amount at least equal to the medical expenses that had been incurred, an amount of $72,000, would be appropriate to compensate him for pain and suffering and loss of enjoyment of life.

Stanger responded during closing argument that only $6,649 of Carlson's medical expenses were related to this accident. Therefore, with regard to pain and suffering and loss of enjoyment of life, Stanger suggested the following:

> As far as the general damages, I agree with [Carlson's counsel], this is tough— tough to figure out how much you give somebody as far as money because they have been in an accident. I guess I submit the same thing he did to you, the number of medical bills, $6,649. We admitted he had an exacerbation, and we admit that he was hurt. That doesn't mean he can capitalize and get $158,000 for his injuries.

In reviewing this statement pursuant to Carlson's motion for j.n.o.v., the district court concluded that, although Stanger agreed with Carlson during closing arguments that the jury could follow Carlson's approach in determining general damages, such agreement was not an admission that Carlson was entitled to $6,649. We agree with the district court. Furthermore, based on testimony by Carlson himself regarding his levels of pain both before and after the accident, we conclude that there was substantial evidence on which the jury could base its award of $4,450 in pain and suffering and loss of enjoyment of life.

## C. New Trial

■ Carlson asserts that he is entitled to a new trial on the issues of comparative negligence and damages. On appeal, we review a trial court's decision to grant or deny a new trial for an abuse of discretion, and we will not disturb that decision absent a manifest abuse of this discretion. *Lanham,* 130 Idaho at 497–98, 943 P.2d at 923–24; *Burggraf v. Chaffin,* 121 Idaho 171, 173, 823 P.2d 775, 777 (1991). A trial court's decision to grant or deny an additur is also reviewed under an abuse of discretion standard. *Collins v. Jones,* 131 Idaho 556, 558, 961 P.2d 647, 649 (1998). When a motion for a new

trial is based on the ground of insufficient evidence to justify the verdict, the trial court must weigh the evidence presented at trial and grant the motion only where the verdict is not in accord with its assessment of the clear weight of the evidence. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 45, 896 P.2d 949, 953 (1995). In ruling on the motion, the trial court must independently assess the credibility of the witnesses. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Quick,* 111 Idaho at 766, 727 P.2d at 1194. The trial court is not required to construe the evidence in favor of the jury verdict. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Quick,* 111 Idaho at 767, 727 P.2d at 1195. To grant a new trial, the court must apply a two-prong test: (1) the court must find that the verdict is against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict; and (2) the court must conclude that a retrial would produce a different result. *Lanham,* 130 Idaho at 498, 943 P.2d at 924; *Heitz v. Carroll,* 117 Idaho 373, 378, 788 P.2d 188, 193 (1990).

### 1. Comparative negligence

Citing the same arguments he presented in support of his motions for a directed verdict and j.n.o.v., Carlson contends he is entitled to a new trial on the issue of comparative negligence. Idaho Rule of Civil Procedure 59(a)(6) provides that a new trial may be granted if there is insufficient "evidence to justify the verdict or other decision, or that it is against the law."

The district court's order denying Carlson's motions pertaining to comparative negligence provides, in pertinent part:

However, this Court disagrees with the Plaintiff insofar as he argues the evidence regarding the Plaintiff's negligence was without dispute. Even in those instances where the Plaintiff argued that his testimony may have been uncontroverted, the credibility of the Plaintiff may very well have been at issue.

Furthermore, in addressing Carlson's motion for j.n.o.v., the district court stated that Carlson's credibility may have been an issue. Rejecting the same arguments Carlson raised in support of his motions for directed verdict and j.n.o.v., we conclude that Carlson was not entitled to a new trial on the issue of comparative negligence.

### 2. Damages

Carlson asserts that the district court abused its discretion in denying his motion for additur or, in the alternative, a new trial with regard to damages. Specifically, Carlson asserts he is entitled to an additur based on the same arguments he used to support his j.n.o.v. motion to bring his damage award to $72,156.18 plus compensation for loss of enjoyment of life. In the alternative, Carlson asserts that he is entitled to a new trial on the issue of damages pursuant to the provisions of I.R.C.P. 59(a)(5).

Idaho Rule of Civil Procedure 59(a)(5) provides that a new trial may be granted if there are "[e]xcessive damages or inadequate damages, appearing to have been given under the influence of passion or prejudice." In ruling on Carlson's motion, the district court recognized that Carlson was relying on the same arguments he used to support his motion for j.n.o.v.

On appeal, Carlson again asserts the same arguments for additur or, in the alternative, a new trial that he offered in support of his motion for j.n.o.v. on the issue of damages.[2]

**2.** In addition to the arguments presented to the district court, Carlson asserts that the jury's award was the result of passion or prejudice based on his testimony regarding a past settlement. During cross-examination, Carlson testified that he received a settlement in 1986 from his former employer, the railroad, in the amount of $350,000. In part, Carlson asserts that the jury's failure to award his requested damages and any amount for loss of enjoyment of life was likely the result of passion or prejudice based on his testifying to the amount of his past settle-

ment. Stanger responds that Carlson should be precluded from making this argument for the first time on appeal because Carlson did not argue that the testimony regarding the amount of his railroad settlement was prejudicial before the district court. Argument regarding this settlement and the influence it may have had on the jury is not contained in the transcript of the hearing on Carlson's motions. Furthermore, the district court did not address this argument. Accordingly, Carlson has not shown that the testimony so impacted the jury's verdict that compar-

There was abundant evidence before the district court that Carlson had suffered multiple back injuries both before and after this accident and that the neck pain caused by this accident was of brief duration. Carlson testified that this was his fourth lawsuit seeking compensation for injuries to his back. Carlson also testified that he fell out of the back of a truck after the accident but before trial in April 2004. In addition, there was testimony that a semi-truck backed into his vehicle in November 2002 and that he received a prescription for medication for his back five weeks before the accident at issue in this case. Stanger's first expert testified that, other than describing some neck pain at Carlson's initial visit to the emergency room, Carlson's medical records contained no other indication of neck pain for seventeen months after the accident. Based on our review of the record, we conclude that the district court properly weighed the evidence, determined the jury's award was not so different than its own conclusions so as to shock the conscious, and did not abuse its discretion in denying Carlson's motion for additur or, in the alternative, a new trial pursuant to I.R.C.P. 59(a)(5).

### D. Order Awarding Costs

▉ Following trial, the district court determined that Stanger was the prevailing party and awarded him costs. On appeal, Carlson asserts that the district court erred in this determination that Stanger was the prevailing party. Carlson further argues that he was the prevailing party in this case and therefore entitled to costs pursuant to I.R.C.P. 54(d)(1)(B). The determination of whether a litigant is the "prevailing party" is committed to the discretion of the trial court. *Daisy Mfg. Co., Inc. v. Paintball Sports,* 134 Idaho 259, 261, 999 P.2d 914, 916 (Ct.App. 2000); *Gilbert v. City of Caldwell,* 112 Idaho 386, 399, 732 P.2d 355, 368 (Ct.App.1987).

In this case, Stanger submitted an offer of judgment to Carlson in October 2005. Prior to the offer of judgment, Stanger's insurance company paid Carlson's insurance company $5,000 pursuant to an arbitration agreement to cover medical expenses that Carlson's insurance had paid on his behalf. The offer of judgment was for $12,000. The offer included "any amounts heretofore paid to or on behalf of [Carlson], including a $5,000 subrogation claim already paid to [Carlson's insurance company]." Therefore, Carlson was aware at the time he received the offer of judgment that it was for an additional $7,000. Idaho Rule of Civil Procedure 68 governs offers of judgment and provides, in pertinent part:

(b) In cases involving claims for monetary damages, any costs under Rule 54(d)(1) awarded against the offeree must be based upon a comparison of the offer and the "adjusted award." The adjusted award is defined as (1) the verdict in addition to (2) the offeree's costs under Rule 54(d)(1) incurred before service of the offer of judgment and (3) any attorney fees under Rule 54(e)(1) incurred before service of the offer of judgment. . . .

If the adjusted award obtained by the offeree is less than the offer, then:

(i) the offeree must pay those costs of the offeror as allowed under Rule 54(d)(1), incurred after the making of the offer;

(ii) the offeror must pay those costs of the offeree, as allowed under Rule 54(d)(1), incurred before the making of the offer; and

(iii) the offeror shall not be liable for costs and attorney fees awardable under Rule 54(d)(1) and 54(e)(1) of the offeree incurred after the making of the offer.

If the adjusted award obtained by the offeree is more than the offer, the offeror must pay those costs, as allowed under Rule 54(d)(1), incurred by the offeree both before and after the making of the offer.

▉ Idaho Code Section 41–1840 governs prepayment of claims and provides, in pertinent part:

(2) All such payments shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefore in such an action against, the payor or his insurer, and in favor of any person to

ing its award to what the district court would have awarded shocks the conscious.

whom or on whose account payment was made.

In concluding Stanger was the prevailing party, the district court noted:

The Idaho Supreme Court has determined that both a judgment following a jury verdict and a Rule 68 offer of judgment fit within the [prepayment of claims description found in I.C. § 41–1840(2)]. [*Leavitt v. Swain*, 133 Idaho 624, 632, 991 P.2d 349, 357 (1999)]. The *Leavitt* court further held that "pre-litigation payments, which *can* be credited to a verdict under I.C. § 41–1840, *must* also be credited to an offer of judgment made under I.R.C.P. 68." *Id.* (emphasis added).

Based on [I.C.] § 41–1840 and in accordance with the Leavitt decision, the $5,000 prelitigation payment made to Mr. Carlson can be credited to the verdict, as payment made by one party's insurer to or on behalf of the opposing party shall be credited against any judgement, verdict or settlement finally obtained in the case. This includes payments made by a defendant's insurer on behalf of a plaintiff. Therefore, such payment must also be credited to the Offer of Judgment. Thus, as application of the reasoning employed in the *Leavitt* case requires a credit or reduction against *both* the offer of judgment and the jury verdict, the final calculations in this case are as follows:

1. Jury verdict of $13,349.00, reduced by 30% comparative negligence equals **final jury verdict of $9,344.30.**

2. Jury award of $9,344.30 reduced by the $5,000 in pre-litigation payments paid by Defendant's insurer on behalf of the Plaintiff for the Plaintiff's medical bills, for a **final award of $4,344.30.**

3. Offer of Judgment of $12,000 reduced by the $5,000 in pre-litigation payments for a **final Offer of Judgment of $7,000.**

A comparison of the final Judgment of $4,344.30 and the final Offer of Judgment of $7,000, shows that the Defendant in this case clearly remains the prevailing party.

Carlson assigns a number of errors to the district court's determination that Stanger was the prevailing party. First, Carlson asserts that the $5,000 was not a pre-litigation payment of medical expenses on his behalf and, therefore, the $5,000 should not be offset against the jury verdict. Carlson argues that he did not consent to the $5,000 payment from Stanger's insurance to his insurance company and that it was never established that the $5,000 his insurance company paid for his medical expenses covered the same money that the jury awarded him for medical expenses. Essentially, Carlson asserts that the only way his insurance company could recover the $5,000 from him under the subrogation clause was to await the outcome of trial and then assert its subrogation claim as recoverable from medical expenses awarded him by the jury.

To support his argument, Carlson relies on I.C. § 41–2505, which governs subrogation rights of insurers. Idaho Code Section 41–2505 provides, in pertinent part:

In the event of payments to an insured under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payments shall, to the extent thereof, be entitled to *the proceeds of any settlement or judgment* resulting from the exercise of any rights of recovery of such insured against any person or organization legally responsible for the bodily injury for which such payment is made.

(Emphasis added). Carlson also cites *Dyet v. McKinley*, 139 Idaho 526, 531, 81 P.3d 1236, 1241 (2003), for the proposition that whether an insurance company seeks recovery from an insured under a subrogation clause is a contractual matter between the insured and the insurer. Based on this authority, Carlson asserts that his insurer was contractually obligated to seek recovery against him after a settlement or judgment and not before.

Stanger responds that Carlson's assertion that he is entitled to await the outcome at trial and then negotiate the subrogation claim with his insurance is refuted by *Schaffer v. Curtis–Perrin*, 141 Idaho 356, 109 P.3d 1098 (2005). In that case, Schaffer was injured when Curtis–Perrin crashed her vehicle into Schaffer's car. Schaffer received a

payment from her insurance policy for medical expenses. Prior to trial, Curtis–Perrin's insurance claims representative tendered a check to Schaffer's insurance to pay the subrogation claim. Both drivers were insured by the same company, but the Idaho Supreme Court determined that, for the purpose of determining a prepayment of a claim pursuant to I.C. § 41–1840, that did not matter. The Court concluded that Curtis–Perrin was entitled to a credit against the jury verdict for the amount her insurance paid to reimburse Schaffer's insurance for the subrogation claim. *Schaffer*, 141 Idaho at 359, 109 P.3d at 1101. Stanger asserts that "implicit in the Court's holding, if not expressly stated, is that first-party medical payment insurers and liability insurers are entirely free to resolve subrogation claims as between themselves for all purposes including qualifying credits under Idaho Code, § 41–1840."

We agree with Stanger's argument. The Idaho Supreme Court's holding in *Schaffer* indicates that insurance companies are free to resolve subrogation claims prior to a settlement or verdict. Therefore, we conclude that Carlson's insurance company was free to resolve the subrogation claim with Stanger's insurance company prior to trial and, once that claim was paid it became a pre-litigation payment, which may be subtracted from a jury's verdict pursuant to I.C. § 41–1840.

Furthermore, pre-litigation payments, which can be credited to a verdict under I.C. § 41–1840, must also be credited to an offer of judgment made under I.R.C.P. 68.[3] *Leavitt*, 133 Idaho at 632, 991 P.2d at 357. When Carlson received the offer of

judgment in October 2005, he was aware that the offer was only for $7,000 because Stanger's insurance had already paid the $5,000. Carlson was offered an additional $7,000 to settle his claims. We conclude that the district court properly deducted the $5,000 from the jury's verdict pursuant to I.C. § 41–1840[4] and correctly credited the $5,000 to the offer of judgment pursuant to I.R.C.P. 68. The district court correctly determined that Stanger was the prevailing party and entitled to an award of costs.

### E. Attorney Fees and Costs on Appeal

On appeal, Carlson requests attorney fees and costs pursuant to I.C. § 12–121, I.R.C.P. 54(d)(1) and 54(e)(1), and the Idaho Appellate Rules. Carlson is not the prevailing party on appeal and, therefore, is not entitled to attorney fees and costs.

## III.

## CONCLUSION

There was substantial evidence presented to the jury from which it could determine that Carlson breached his duty of care and, therefore, Carlson was not entitled to a directed verdict, j.n.o.v., or a new trial on the issue of comparative negligence. There was also substantial evidence to support the jury's award of damages, and Carlson was not entitled to j.n.o.v. on that issue. The district court did not abuse its discretion in denying Carlson's motion for additur or, in the alternative, a new trial. The district court did not abuse its discretion in determining Stanger was the prevailing party.

---

**3.** Carlson would like this Court to conclude that only the offer of judgment should be credited with the $5,000 payment made by Stanger's insurance. However, only crediting the offer of judgment with the $5,000 would, in essence, give Carlson a double recovery because he would have recovered the $5,000 for his damages from the jury award and the $5,000 would have already been paid by his insurance and reimbursed by Stanger's insurance. Either both the offer of judgment and the jury verdict should be credited with the $5,000, or neither should be. If you credit both, the offer of judgment is $7,000 and the jury's award is $4,344.30 and Stanger is the prevailing party. If you credit neither, the offer of judgment is $12,000 and the jury's award is

$9,344.30 and Stanger is still the prevailing party.

**4.** We note that, even if Carlson's insurance company's subrogation claim entitled it to recover only from the amount Carlson was awarded for medical expenses, it does not change the outcome. The jury awarded Carlson $6,640 in medical expenses. Reducing $6,640 by 30 percent (the percentage the jury found Carlson responsible for the accident) leaves a total award for medical expenses of $4,648. If $4,648 is deducted from the jury's award instead of $5,000 and that new figure is compared to the offer of judgment, Stanger remains the prevailing party.

Because Carlson was not the prevailing party, he is not entitled to attorney fees and costs on appeal. The district court's orders denying Carlson's motions and determining Stanger was the prevailing party are affirmed. Stanger did not request attorney fees on appeal; however, as the prevailing party he is entitled to costs.

Chief Judge GUTIERREZ and Judge LANSING, concur.